THE STATE OF OHIO, APPELLEE, *v.* JOHNSON, APPELLANT.

[Cite as *State v. Johnson*, 128 Ohio St.3d 153, 2010-Ohio-6314.]

*Criminal law — Allied offenses of similar import — R.C. 2941.25 — Conduct of accused to be considered — State v. Rance overruled — Felony murder, R.C. 2903.02(B), and child endangering, R.C. 2919.22(B)(1).*

(No. 2009-1481 — Submitted May 11, 2009 — Decided December 29, 2010.)

CERTIFIED by the Court of Appeals for Hamilton County, Nos. C-080156 and C-080158, 2009-Ohio-2568.

_____

SYLLABUS OF THE COURT

1. When determining whether two offenses are allied offenses of similar import subject to merger under R.C. 2941.25, the conduct of the accused must be considered. (*State v. Rance* (1999), 85 Ohio St.3d 632, 710 N.E.2d 699, overruled.)

_____

**BROWN, C.J.**

## I. Certified Issue

{¶ 1} The First District Court of Appeals certified the following issue pursuant to Section 3(B)(4), Article IV of the Ohio Constitution and App.R. 25: "Are the elements of child endangering [set forth in R.C. 2919.22(B)(1)] sufficiently similar to the elements of felony murder with child endangering as the predicate offense that the commission of the murder logically and necessarily also results in the commission of the child endangering?" (Bracketed material sic.)

{¶ 2} We answer the certified question in the affirmative in this case and reverse the judgment of the court of appeals.

## II. Facts and Procedural Posture

**{¶ 3}** Fred Johnson, appellant, beat seven-year-old Milton Baker to death. A jury found Johnson guilty of various crimes based upon his violence against Milton. Two of those crimes are relevant to this appeal: felony murder under R.C. 2903.02(B) (based upon the predicate offense of child endangering) and child endangering under R.C. 2919.22(B)(1).

**{¶ 4}** Johnson claims that the trial court should have merged the felony-murder conviction and the child-endangering conviction under R.C. 2941.25 as allied offenses. In Johnson's direct appeal, the First District Court of Appeals disagreed, reasoning that the felony-murder statute and the child-endangering statute served different societal interests and therefore could not be considered allied offenses.

**{¶ 5}** The court of appeals recognized that its holding on this issue was in conflict with a decision of the Fifth District Court of Appeals in *State v. Mills*, Tuscarawas App. No. 2007 AP 07 0039, 2009-Ohio-1849. Mills was convicted of felony murder under R.C. 2903.02(B) and child endangering under R.C. 2919.22(B)(1) for the death of a child in her custody during daycare. The Fifth District Court of Appeals held that the offenses of felony murder and child endangering were allied, reasoning that felony murder based upon the predicate offense of child endangering was so aligned with the offense of child endangering that one could not commit the murder without, at the same time, meeting the elements of the child-endangering statute. 2009-Ohio-1849 at ¶ 229.

**{¶ 6}** The court of appeals certified the conflict between its decision in this case and the decision in *Mills*. We recognized the conflict. *State v. Johnson*, 123 Ohio St.3d 1405, 2009-Ohio-5031, 914 N.E.2d 203.

### III. Analysis

*A. Introduction*

**{¶ 7}** This case is yet another example "of how difficult our jurisprudence on allied offenses has become." *State v. Williams*, 124 Ohio St.3d

381, 2010-Ohio-147, 922 N.E.2d 937, ¶ 29 (Lanzinger, J., concurring in part and dissenting in part). Once again, we are presented with two offenses and asked whether they are allied offenses that merge according to R.C. 2941.25. Two courts of appeals have examined the issue and reached different conclusions.

{¶ 8} In 1999, when we decided *State v. Rance* (1999), 85 Ohio St.3d 632, 710 N.E.2d 699, we intended to create a test of ready application that would produce clear, predictable results with regard to allied offenses. Id. at 636. Unfortunately, the standard announced in *Rance* has proven difficult to apply. We take this opportunity to overrule *Rance*. In doing so, we return to the mandate of R.C. 2941.25, which instructs courts to consider whether a defendant's conduct constituted two or more allied offenses of similar import. See *Williams*, 124 Ohio St.3d 381, 2010-Ohio-147, 922 N.E.2d 937, at ¶ 31-34 (Lanzinger, J., concurring in part and dissenting in part).

{¶ 9} We hold that Johnson's two offenses were allied under R.C. 2941.25 because the same conduct constituted the commission of two offenses of similar import under the facts of this case.

### B. *The history of the allied-offenses analysis*

#### l. The law of allied offenses prior to *State v. Rance*

{¶ 10} We laid the groundwork for analysis of allied offenses in *State v. Botta* (1971), 27 Ohio St.2d 196, 56 O.O.2d 119, 271 N.E.2d 776. In *Botta*, we explained that a jury could find that a defendant had committed multiple offenses from a single occurrence when "all the essential elements of fact as to both offenses had been proved." Id. at 202. This preserved the integrity of the jury's fact-finding role. Id. at 204. But we held that as a matter of law, once the jury returned its verdicts, the court could sentence only as to one offense and would have to dismiss the other. Id. We held that a person could commit several distinct and independent crimes "at the same time and in the same transaction,"

yet when "in substance and effect but one offense has been committed," the court could sentence on only one offense and must dismiss the other. Id. at 202-203.

{¶ 11} The reasoning of *Botta* was based upon the concept of "merger," described as "the penal philosophy that a major crime often includes as inherent therein the component elements of other crimes and that these component elements, in legal effect, are merged in the major crime." Id. at 201.

{¶ 12} In 1972, the General Assembly enacted R.C. 2941.25 in order to guide courts in the determination of offenses subject to merger. *State v. Logan* (1979), 60 Ohio St.2d 126, 131, 14 O.O.3d 373, 397 N.E.2d 1345 ("the statute has attempted to codify the judicial doctrine * * * sometimes referred to as the doctrine of merger, and other times as the doctrine of divisibility of offenses" [footnotes omitted]).[1]

{¶ 13} R.C. 2941.25 provides:

{¶ 14} "(A) Where the same conduct by defendant can be construed to constitute two or more allied offenses of similar import, the indictment or information may contain counts for all such offenses, but the defendant may be convicted of only one.

{¶ 15} "(B) Where the defendant's conduct constitutes two or more offenses of dissimilar import, or where his conduct results in two or more offenses of the same or similar kind committed separately or with a separate animus as to each, the indictment or information may contain counts for all such offenses, and the defendant may be convicted of all of them."[2]

---

1. The statute does not use the term "merger" but instead refers to "allied offenses." Over time, the statutory term "allied offenses" has become the legal-vernacular shorthand for the types of offenses subject to merger under R.C. 2941.25.

2. {¶ a} The Legislative Service Commission comments to this statute explain:

{¶ b} "This section provides that when an accused's conduct can be construed to amount to two or more offenses of similar import, he may be charged with all such offenses but may be convicted of only one. If his conduct constitutes two or more dissimilar offenses, or two or more offenses of

{¶ 16} R.C. 2941.25 has never been amended.

{¶ 17} In 1976, we discussed the recently enacted R.C. 2941.25 in *Maumee v. Geiger* (1976), 45 Ohio St.2d 238, 74 O.O.2d 380, 344 N.E.2d 133. We explained that "[b]y the enactment of this section, the General Assembly resolved the problems of common law procedure and practice in a practical and realistic fashion, and in conformity with this court's decision in *State v. Botta* [27 Ohio St.2d 196, 56 O.O.2d 119, 271 N.E.2d 776]." Id. at 242. The purpose of R.C. 2941.25, we noted, was to prevent " 'shotgun' convictions." Id., quoting the Legislative Service Commission comments to R.C. 2941.25.

{¶ 18} In 1979, we surveyed the cases applying R.C. 2941.25 and developed a cohesive approach to analysis of allied offenses under that statute, an approach that has been used (in modified form) up to today. *Logan*, 60 Ohio St.2d at 128, 14 O.O.3d 373, 397 N.E.2d 1345. In interpreting R.C. 2941.25(A), we held:

{¶ 19} "[I]n order for two crimes to constitute allied offenses of similar import, there must be a recognized similarity between the elements of the crimes committed. The offenses and their elements must correspond to such a degree that commission of the one offense will result in the commission of the other.

the same or similar kind but committed at different times or with a separate 'ill will' as to each, then he may be charged with and convicted of all such offenses.

{¶ c} "The basic thrust of the section is to prevent 'shotgun' convictions. For example, a thief theoretically is guilty not only of theft but of receiving stolen goods, insofar as he receives, retains, or disposes of the property he steals. Under this section, he may be charged with both offenses but he may be convicted of only one, and the prosecution sooner or later must elect as to which offense it wishes to pursue. On the other hand, a thief who commits theft on three separate occasions or steals different property from three separate victims in the space, say, of 5 minutes, can be charged with and convicted of all three thefts. In the first instance the same offense is committed three different times, and in the second instance the same offense is committed against three different victims, i.e. with a different animus as to each offense. Similarly, an armed robber who holds up a bank and purposely kills two of the victims can be charged with and convicted of one count of aggravated robbery and of two counts of aggravated murder. Robbery and murder are dissimilar offenses, and each murder is necessarily committed with a separate animus, though committed at the same time." 1973 Legislative Service Commission comments to 1972 Am.Sub.H.B. No. 511.

**{¶ 20}** "In addition * * *, the defendant, in order to obtain the protection of R.C. 2941.25(A), must show that the prosecution has relied upon the same conduct to support both offenses charged." Id.

**{¶ 21}** We went on to examine the requirement of animus in R.C. 2941.25(B), concluding that "notwithstanding the fact that a defendant is charged with two or more offenses of the same or similar kind he may be convicted of all of them if he committed them separately, or if he possessed a separate 'animus' as to each." Id. at 129, 14 O.O.3d 373, 397 N.E.2d 1345.

**{¶ 22}** Several years later, we summarized the then-familiar *Logan* two-step approach to R.C. 2941.25 in *State v. Blankenship* (1988), 38 Ohio St.3d 116, 526 N.E.2d 816. "In the first step, the elements of the two crimes are compared. If the elements of the offenses correspond to such a degree that the commission of one crime will result in the commission of the other, the crimes are allied offenses of similar import and the court must then proceed to the second step. In the second step, the defendant's conduct is reviewed to determine whether the defendant may be convicted of both offenses. If the court finds either that the crimes were committed separately or that there was a separate animus for each crime, the defendant may be convicted of both offenses." Id. at 117.

**{¶ 23}** The concurring opinion in *Blankenship* explained that in the first step, a court determines "whether the nature of the elements of the offenses is such that in some instances they may overlap, that is, that in certain instances, both crimes may be committed by the same conduct," and that the second step "is based upon the conduct involved in a particular case, and the issue is whether in fact both offenses were committed by the same conduct." Id. at 119 (Whiteside, J., concurring) (adding that the third step of the analysis concerned the defendant's animus).

**{¶ 24}** In *Newark v. Vazirani* (1990), 48 Ohio St.3d 81, 83, 549 N.E.2d 520, we performed the *Blankenship* allied-offenses analysis perfunctorily,

focusing simply on whether the elements of the offenses overlapped based upon the defendant's conduct in that case. We were not compelled to compare the elements of the offenses in the abstract, but instead simply held that "the elements of these two crimes are so similar that the commission of one offense necessarily results in the commission of the other offense *as applied to the facts of this case*." (Emphasis added.) Id. It is this analysis—the evaluation of separate offenses based upon the facts of the case—that the court took issue with in *State v. Rance*, 85 Ohio St.3d at 637-638, 710 N.E.2d 699.

### 2. *State v. Rance*

{¶ 25} In *State v. Rance,* we took stock of the jurisprudence regarding the analysis of allied offenses under R.C. 2941.25. We explained that a person may be punished for multiple offenses arising from a single criminal act without violating the Double Jeopardy Clauses of the United States and Ohio Constitutions, so long as the General Assembly intended cumulative punishment. Id., 85 Ohio St.3d at 635, 710 N.E.2d 699. The hazard, from a constitutional standpoint, is that a court might impose a greater sentence than prescribed by the legislature. Id. Thus, the lodestar for allied offenses is whether the "legislature signals its intent to either prohibit or permit cumulative punishments for conduct that may qualify as two crimes." Id.

{¶ 26} In *Rance*, we held that the General Assembly provided R.C. 2941.25 as a guide for courts to determine whether particular offenses were intended to be allied. Id. at 635–636. The defendant is not placed in jeopardy twice for the same offense so long as courts properly apply R.C. 2941.25 to determine the intent of the General Assembly with regard to the merger of offenses. Id.

{¶ 27} We held that the applicable test was stated in *Blankenship*. *Rance,* 85 Ohio St.3d at 636, 710 N.E.2d 699. Yet we found that there was a problem inherent in the *Blankenship* standard: it was unclear whether, under step one,

courts "should contrast the statutory elements in the abstract or consider the particular facts of the case." Id. We determined that we should "settle this issue for Ohio courts, and we believe[d] that comparison of the statutory elements in the abstract is the more functional test, producing 'clear legal lines capable of application in particular cases.' " Id., quoting *Kumho Tire Co., Ltd. v. Carmichael* (1999), 526 U.S. 137, 148, 119 S.Ct. 1167, 143 L.Ed.2d 238. In so holding we overruled the approach of *Newark v. Vazirani*, 48 Ohio St.3d 81, 549 N.E.2d 520, wherein the elements of offenses were evaluated on the facts of the case to determine whether the crimes were allied. *Rance* at 638.

3. The allied-offenses analysis after *State v. Rance*

{¶ 28} Cases following *Rance* have demonstrated both the difficulty in applying the ethereal "in the abstract" analysis and the absurd results that would result from strict adherence to it. In order to prevent injustice and to avoid absurd results, the cases following *Rance* have suffered ad hoc revisions and work-arounds to the *Rance* standard.

{¶ 29} In *State v. Cabrales*, 118 Ohio St.3d 54, 2008-Ohio-1625, 886 N.E.2d 181, ¶ 20, we acknowledged that "[d]espite trying to define a test 'capable of application in particular cases,' *Rance* has produced inconsistent, unreasonable, and, at times, absurd results." We noted a few examples of the problems that courts of appeals were having with the *Rance* analysis. For instance, the Fourth District Court of Appeals had stated, " '[W]e are aware of the practical result of our conclusion: [the defendant] stands convicted of both creating a substantial risk of physical harm and causing the death of [the victim] based on one occurrence. * * * "[T]his result seems intuitively wrong, [but] the Supreme Court's holding in *Rance* forces us to affirm."' " Id. at ¶ 19, quoting *State v. Cox,* Adams App. No. 02CA751, 2003-Ohio-1935, 2003 WL 1889479, quoting *State v. Shinn* (June 14, 2000), Washington App. Nos. 99CA29 and 99CA35, 2000 WL 781106.

**{¶ 30}** We explained the absurd result that would follow from a strict application of *Rance* to Cabrales's convictions. Id. at ¶ 24. Under such an analysis, we would have been compelled to hold that possession of and trafficking in the same controlled substance were not allied offenses, because the elements do not align exactly, "even though common sense and logic tell us that in order to prepare a controlled substance for shipping, ship it, transport it, deliver it, prepare it for distribution, or distribute it, one must necessarily also possess it." Id. We went on to list several other cases in which we held that offenses were allied, despite an inexact alignment of the elements, including theft and receiving stolen property, kidnapping and rape, and aggravated robbery and kidnapping. Id. at ¶ 25.

**{¶ 31}** Ultimately, to avoid the attendant absurd consequences of a strict application of the *Rance* standard, we held that the allied-offenses analysis "does not require an exact alignment of elements" or "strict textual comparison." *Cabrales,* 118 Ohio St.3d 54, 2008-Ohio-1625, 886 N.E.2d 181, at ¶ 26-27. "Instead, if, in comparing the elements of the offenses in the abstract, the offenses are so similar that the commission of one offense will necessarily result in commission of the other, then the offenses are allied offenses of similar import." Id. at ¶ 26. Thus, we explicitly abandoned the rigid framework of an allied-offenses analysis based upon exact alignment of the elements of a criminal offense, yet we held that the offenses must be so similar that commission of one would necessarily result in the commission of the other. Id.

**{¶ 32}** *Cabrales* modified the *Rance* analysis; however, the *Cabrales* standard failed to prevent the absurd results that obtained from comparing crimes in the abstract.

**{¶ 33}** In *State v. Brown*, 119 Ohio St.3d 447, 2008-Ohio-4569, 895 N.E.2d 149, we announced what Chief Justice Moyer later described as a preemptive exception to the *Rance/Cabrales* analysis to prevent just such an

absurd result. *State v. Winn*, 121 Ohio St.3d 413, 2009-Ohio-1059, 905 N.E.2d 154, at ¶ 39 (Moyer, C.J., dissenting).

{¶ 34} In *Brown*, the defendant stabbed her boyfriend once in the abdomen. She was convicted of two forms of felonious assault, one for a use of deadly weapon and one for causing serious bodily harm. Deadly-weapon felonious assault requires the use of a deadly weapon, but not serious bodily harm, whereas the serious-physical-harm felonious-assault offense requires serious physical harm, but no deadly weapon. R.C. 2903.12(A)(1) and (A)(2). Thus, under the *Cabrales/Rance* analysis, Brown's convictions would stand because, in the abstract, the commission of one of type of felonious assault would not necessarily result in the commission of the other. The absurdity is patent: Brown could have been convicted for two felonious assaults for the same, single stabbing under the *Cabrales/Rance* standard.

{¶ 35} While acknowledging the *Cabrales/Rance* standard in *Brown*, we declined to apply it. 119 Ohio St.3d 447, 2008-Ohio-4569, 895 N.E.2d 149, at ¶ 1. Instead, we formulated a preemptive exception that provided that if it was clear that the General Assembly intended to protect the same societal interest in two separate offenses, as in the case of the two sections of the felonious-assault statute, the offenses were allied and should be merged for sentencing without need for further analysis. Id. at ¶ 39–40. We held that courts need not perform the R.C. 2941.25 analysis required by *Rance/Cabrales* "when the legislature's intent is clear from the language of the statute." Id. at ¶ 37.

{¶ 36} This end-run around the existing allied-offenses analysis would not be the last attempt at modifying the standard in order to prevent absurd results.

{¶ 37} In *State v. Winn*, we again modified the allied-offenses analysis— this time to do away with the requirement in *Cabrales* that the commission of one crime would "necessarily" result in the commission of the other—by holding, as Chief Justice Moyer characterized the holding in dissent, that it was enough if the

commission of one crime would "probably" result in the commission of the other. 121 Ohio St.3d 413, 2009-Ohio-1059, 905 N.E.2d 154, at ¶ 32–33 (Moyer, C.J., dissenting).

{¶ 38} In *Winn*, we held that kidnapping and aggravated robbery were allied offenses. Id. at ¶ 21. Although it was possible to advance hypothetical examples under which an aggravated robbery would not also constitute a kidnapping, the majority held that the elements of the offenses aligned because "[i]t is difficult to see how the presence of a weapon that has been shown or used, or whose possession has been made known to the victim during the commission of a theft offense, does not also forcibly restrain the liberty of another." Id. In dissent, Chief Justice Moyer sharply criticized this holding. Id. at ¶ 33-34. The chief justice argued that the majority had ignored *Cabrales'*s instruction that " 'if, in comparing the elements of the offenses in the abstract, the offenses are so similar that the commission of one offense will *necessarily* result in commission of the other, then the offenses are allied offenses of similar import.' (Emphasis added.) *Cabrales*, 118 Ohio St.3d 54, 2008-Ohio-1625, 886 N.E.2d 181, ¶ 26." Id. at ¶ 27. The chief justice explained that the majority had changed the allied-offenses standard again: "Instead of requiring that the commission of one offense *necessarily* results in the commission of the other, the majority requires that the commission of one offense *probably* results in the commission of the other. * * * The unworkability of this standard is apparent. Trial courts will have little guidance in determining when two offenses are similar enough that they should be merged as allied offenses." (Emphasis sic.) Id. at ¶ 33.

{¶ 39} In *State v. Harris*, 122 Ohio St.3d 373, 2009-Ohio-3323, 911 N.E.2d 882, at ¶ 28-31, Justice Cupp wrote a concurring opinion echoing Chief Justice Moyer's concerns. Justice Cupp explained the difficulty with the allied-offenses standard articulated by *Winn*: "*Winn* requires a subjective determination about when hypothetical alternative ways of committing a crime are so unlikely to

occur that they are improbable and, therefore, insufficient to defeat a conclusion that the crimes are allied offenses under R.C. 2941.25.  \* \* \* The *Winn* approach—determining whether commission of one offense probably results in commission of the other—requires a subjective determination about which reasonable minds are likely to differ." (Emphasis sic.)  Id. at ¶ 30.

{¶ 40} In summary, this court has gone to great efforts to salvage the *Rance* standard.  We have modified it and created exceptions to it in order to avoid its attendant absurd results.  However, our allied-offenses jurisprudence has suffered as a consequence.  Our cases currently (1) require that a trial court align the elements of the offenses in the abstract—but not too exactly (*Cabrales*), (2) permit trial courts to make subjective determinations about the probability that two crimes will occur from the same conduct (*Winn*), (3) instruct trial courts to determine preemptively the intent of the General Assembly outside the method provided by R.C. 2941.25 (*Brown*), and (4) require that courts ignore the commonsense mandate of the statute to determine whether the same conduct of the defendant can be construed to constitute two or more offenses (*Rance*).  The current allied-offenses standard is so subjective and divorced from the language of R.C. 2941.25 that it provides virtually no guidance to trial courts and requires constant ad hoc review by this court.

### C. State v. Rance is overruled

{¶ 41} It is time to return our focus to the plain language and purposes of the merger statute.

{¶ 42} R.C. 2941.25 itself instructs us to look at the defendant's conduct when evaluating whether his offenses are allied.  As Justice Lanzinger explained in her dissenting opinion in *Williams*: "In spite of the \* \* \* [statutory] language emphasizing the importance of the defendant's conduct, our current cases analyzing allied offenses instruct us to jump immediately to the abstract comparison of offenses charged without first considering the defendant's actual

conduct as established by the evidence." *Williams*, 124 Ohio St.3d 381, 2010-Ohio-147, 922 N.E.2d 937, at ¶ 34 (Lanzinger, J., dissenting).

{¶ 43} We have consistently recognized that the purpose of R.C. 2941.25 is to prevent shotgun convictions, that is, multiple findings of guilt and corresponding punishments heaped on a defendant for closely related offenses arising from the same occurrence. *Geiger*, 45 Ohio St.2d at 242, 74 O.O.2d 380, 344 N.E.2d 133. This is a broad purpose and ought not to be watered down with artificial and academic equivocation regarding the similarities of the crimes. When "in substance and effect but one offense has been committed," the defendant may be convicted of only one offense. *Botta*, 27 Ohio St.2d at 203, 56 O.O.2d 119, 271 N.E.2d 776.

{¶ 44} Given the purpose and language of R.C. 2941.25, and based on the ongoing problems created by *Rance*, we hereby overrule *Rance* to the extent that it calls for a comparison of statutory elements solely in the abstract under R.C. 2941.25. When determining whether two offenses are allied offenses of similar import subject to merger under R.C. 2941.25, the conduct of the accused must be considered.

{¶ 45} In overruling *Rance,* we need not apply the test of *Westfield v. Galatis*, 100 Ohio St.3d 216, 2003-Ohio-5849, 797 N.E.2d 1256, because R.C. 2941.25 is a prophylactic statute that protects a criminal defendant's rights under the Double Jeopardy Clauses of the United States and Ohio Constitutions. Because there is a constitutional protection underlying the proper application of R.C. 2941.25, stare decisis does not compel us with the same force as it does in other areas of the law. See, e.g., *State v. Bodyke*, 126 Ohio St.3d 266, 2010-Ohio-2424, 933 N.E.2d 753, ¶ 35-37.

*D. Prospective analysis of allied offenses under R.C. 2941.25*

{¶ 46} In determining whether two offenses should be merged, the intent of the General Assembly is controlling. We determine the General Assembly's

intent by applying R.C. 2941.25, which expressly instructs courts to consider the offenses at issue in light of the defendant's conduct. We have long held that the statute's purpose is to prevent shotgun convictions, as explained in the statute's Legislative Service Commission comments. *Geiger*, 45 Ohio St.2d at 242, 74 O.O.2d 380, 344 N.E.2d 133. With these considerations in mind, we adopt the following approach to determination of allied offenses.

**{¶ 47}** Under R.C. 2941.25, the court must determine prior to sentencing whether the offenses were committed by the same conduct. Thus, the court need not perform any hypothetical or abstract comparison of the offenses at issue in order to conclude that the offenses are subject to merger.

**{¶ 48}** In determining whether offenses are allied offenses of similar import under R.C. 2941.25(A), the question is whether it is possible to commit one offense *and* commit the other with the same conduct, not whether it is possible to commit one *without* committing the other. *Blankenship*, 38 Ohio St.3d at 119, 526 N.E.2d 816 (Whiteside, J., concurring) ("It is not necessary that both crimes are always committed by the same conduct but, rather, it is sufficient if both offenses *can be* committed by the same conduct. It is a matter of possibility, rather than certainty, that the same conduct will constitute commission of both offenses." [Emphasis sic]). If the offenses correspond to such a degree that the conduct of the defendant constituting commission of one offense constitutes commission of the other, then the offenses are of similar import.

**{¶ 49}** If the multiple offenses can be committed by the same conduct, then the court must determine whether the offenses were committed by the same conduct, i.e., "a single act, committed with a single state of mind." *Brown*, 119 Ohio St.3d 447, 2008-Ohio-4569, 895 N.E.2d 149, at ¶ 50 (Lanzinger, J., dissenting).

**{¶ 50}** If the answer to both questions is yes, then the offenses are allied offenses of similar import and will be merged.

{¶ 51} Conversely, if the court determines that the commission of one offense will *never* result in the commission of the other, or if the offenses are committed separately, or if the defendant has separate animus for each offense, then, according to R.C. 2941.25(B), the offenses will not merge.

{¶ 52} We recognize that this analysis may be sometimes difficult to perform and may result in varying results for the same set of offenses in different cases. But different results are permissible, given that the statute instructs courts to examine a defendant's conduct—an inherently subjective determination. Thus, a scenario might arise as envisioned by the dissent in *Winn*, in which one court finds that an aggravated robbery can be and was committed without also committing a kidnapping, if, for instance, "a pickpocket points a gun at the victim, but the victim does not know it, and therefore suffers no restraint of his liberty," while in another case, the court may determine that the commission of an aggravated robbery in that case would also constitute a kidnapping, because "a weapon that has been shown * * * during the commission of a theft offense * * * forcibly restrain[ed] the liberty of another." *Winn*, 121 Ohio St.3d 413, 2009-Ohio-1059, 905 N.E.2d 154, at ¶ 29 (Moyer, C.J., dissenting) and at ¶ 21.

*E. Application in This Case*

{¶ 53} Johnson was convicted of felony murder under R.C. 2903.02(B) (based upon the predicate offense of child endangering) and child endangering under R.C. 2919.22(B)(1), among other crimes. In this case, the crimes of felony murder and child endangering are allied offenses.

{¶ 54} The offenses were based upon the following conduct. In the incident at issue, Johnson was in a room alone with Milton while the boy's mother was in a different room watching television. The mother heard Johnson yelling, heard a "thump" or "stomping," and went to investigate. She found Johnson yelling at Milton for mispronouncing a word while reading, and she observed Johnson push Milton to the floor. The mother left the room. Shortly

thereafter, she heard another loud "thump" or "stomp." When she went to the room, she saw Milton shaking on the floor. Neighbors testified that they had heard the boy crying and heard Johnson "whooping" the boy and yelling, "Do you want pain? You want pain? I'll give you pain!"

{¶ 55} Milton's death was a result of injuries sustained from blunt impact to the head. Medical experts testified as to older injuries indicative of multiple incidents of child abuse.

{¶ 56} We agree with the court of appeals that the state relied upon the same conduct to prove child endangering under R.C. 2919.22(B)(1) and felony murder. Although there were arguably two separate incidents of abuse, separated by time and brief intervention by Milton's mother, the state obtained a conviction for the first sequence of abuse under R.C. 2919.22(B)(3) for administering excessive physical discipline. It was the second sequence of abuse for which the state obtained a conviction under R.C. 2919.22(B)(1) for abuse that caused serious physical harm. And the conviction for the second sequence of events under R.C. 2919.22(B)(1) is the basis for the predicate offense of felony murder under R.C. 2903.02(B). Thus, the two offenses were based upon the same conduct for purposes of R.C. 2941.25. We decline the invitation of the state to parse Johnson's conduct into a blow-by-blow in order to sustain multiple convictions for the second beating. This beating was a discrete act that resulted in the simultaneous commission of allied offenses, child abuse and felony murder.

{¶ 57} Johnson's beating of Milton constituted child abuse under R.C. 2919.22(B)(1).[3] That child abuse formed the predicate offense for the felony

---

3. {¶ a} R.C. 2919.22(B)(1) provides:

{¶ b} "(B) No person shall do any of the following to a child under eighteen years of age or a mentally or physically handicapped child under twenty-one years of age:

{¶ c} "(1) Abuse the child."

murder under R.C. 2903.02(B).[4]  The conduct that qualified as the commission of child abuse resulted in Milton's death, thereby qualifying as the commission of felony murder.

### IV. Conclusion

**{¶ 58}** For the foregoing reasons, we answer the certified issue in the affirmative and reverse the judgment of the court of appeals.  The case is remanded to the trial court for further proceedings consistent with this opinion.

Judgment reversed

and cause remanded.

PFEIFER and LUNDBERG STRATTON, JJ., concur.

O'CONNOR, O'DONNELL, LANZINGER, and CUPP, JJ., concur in the syllabus and judgment.

_____

**O'CONNOR, J., concurring in judgment.**

**{¶ 59}** I agree with the majority that the analysis set forth in *State v. Rance* (1999), 85 Ohio St.3d 632, 710 N.E.2d 699, for determining whether two or more offenses are allied offenses of similar import pursuant to R.C. 2941.25 has proven difficult to apply.  I write separately because I do not believe that the majority opinion clearly sets forth the appropriate considerations for determining whether offenses arise out of the same conduct and should be merged pursuant to R.C. 2941.25.

**{¶ 60}** R.C. 2941.25 provides:

**{¶ 61}** "(A) Where the same conduct by defendant can be construed to constitute two or more allied offenses of similar import, the indictment or

---

4. {¶ a} R.C. 2903.02(B) provides:

{¶ b} "No person shall cause the death of another as a proximate result of the offender's committing or attempting to commit an offense of violence that is a felony of the first or second degree and that is not a violation of section 2903.03 or 2903.04 of the Revised Code."

information may contain counts for all such offenses, but the defendant may be convicted of only one.

{¶ 62} "(B) Where the defendant's conduct constitutes two or more offenses of dissimilar import, or where his conduct results in two or more offenses of the same or similar kind committed separately or with a separate animus as to each, the indictment or information may contain counts for all such offenses, and the defendant may be convicted of all of them."

{¶ 63} Much of the confusion is caused by the statutory terminology "allied offenses of similar import." Thus, our analysis must begin with an understanding of this term.

{¶ 64} In practice, allied offenses of similar import are simply multiple offenses that arise out of the same criminal conduct and are similar but not identical in the significance of the criminal wrongs committed and the resulting harm. R.C. 2941.25 permits a defendant to be charged with, and tried for, multiple offenses based on the same conduct but permits only one conviction based on conduct that results in similar criminal wrongs that have similar consequences.

{¶ 65} Our decisions have described the two features of allied offenses of similar import together, see, e.g., *State v. Cabrales*, 118 Ohio St.3d 54, 2008-Ohio-1625, 886 N.E.2d 181, ¶ 30 (offenses are allied offenses of similar import if commission of the first offense necessarily results in commission of the second). But it may aid understanding to address the statutory terms "allied offenses" and "of similar import" as separate components of the standard in R.C. 2941.25(A).

{¶ 66} Under the later formulations of *State v. Winn*, 121 Ohio St.3d 413, 2009-Ohio-1059, 905 N.E.2d 154, and *State v. Harris*, 122 Ohio St.3d 373, 2009-Ohio-3323, 911 N.E.2d 882, offenses are "allied" when their elements align to such a degree that commission of one offense would probably result in the commission of the other offense.

**{¶ 67}** Offenses are of "similar import" when the underlying conduct involves similar criminal wrongs and similar resulting harm.

**{¶ 68}** The question becomes how to determine whether offenses that stem from the same conduct result in offenses of "similar import" within the meaning of R.C. 2941.25. The significant amount of litigation regarding this question since *Rance* was decided strongly suggests that instead of examining the elements of the offense solely in the abstract, the analysis under R.C. 2941.25(A) should also examine the defendant's conduct in the context of determining whether the offenses are of similar import. *Rance,* inasmuch as it requires a comparison of the elements of the offenses solely in the abstract, should be overruled. A defendant may be indicted for multiple offenses that arise out of the same conduct, R.C. 2941.25(A), and the trier of fact may find the defendant guilty of multiple offenses that arise out of the same conduct without running afoul of R.C. 2941.25. The trial court does not consider a defendant's merger argument until the state has proven all of the elements of each offense beyond a reasonable doubt. See *State v. Whitfield,* 124 Ohio St.3d 319, 2010-Ohio-2, 922 N.E.2d 182, ¶18, citing *Ohio v. Johnson* (1984), 467 U.S. 493, 498, 104 S.Ct. 2536, 81 L.Ed.2d 425, and quoting *State v. Gapen*, 104 Ohio St.3d 358, 2004-Ohio-6548, 819 N.E.2d 1047, ¶ 135 ("In cases in which the imposition of multiple punishments is at issue, R.C. 2941.25(A)'s mandate that a defendant may be 'convicted' of only one allied offense is a protection against multiple sentences rather than multiple convictions. * * * Thus, to ensure that there are not improper cumulative punishments for allied offenses, courts must be cognizant that R.C. 2941.25(A) requires that 'the trial court effects the merger at sentencing' ").

**{¶ 69}** Because the trial court does not consider a defendant's merger argument until after the trier of fact has determined that the defendant is guilty of multiple offenses, the trial court's consideration of whether there should be merger is aided by a review of the evidence introduced at trial.

**{¶ 70}** At trial in this case, the state relied on the same evidence to establish that Johnson's conduct—severely beating Milton and causing his death—violated both the child-endangering statute (R.C. 2919.22(B)(1)) and the felony-murder statute (R.C. 2903.02(B)). Although there may have been alternative theories that the state considered in pursuing Johnson for endangering and ultimately killing Milton, we are constrained by the record before us and the legal arguments raised in the briefs. Based on that record and those arguments, I am compelled to conclude that the convictions in this case arose from the same conduct that involves similar criminal wrongs and similar resulting harm and, accordingly, are allied offenses of similar import that must merge for the purpose of sentencing pursuant to R.C. 2941.25(A).

**{¶ 71}** Accordingly, I concur in the judgment of the majority to reverse and remand for further consideration.

PFEIFER and CUPP, JJ., concur in the foregoing opinion.

_____

**O'DONNELL, J., separately concurring.**

**{¶ 72}** In this case, the court is presented with the opportunity to reconsider our allied-offenses jurisprudence. I concur in the determination that this court's decision in *State v. Rance* (1999), 85 Ohio St.3d 632, 710 N.E.2d 699, should be overruled and agree with the majority that the court's current test of comparing the elements of offenses in the abstract when determining whether two or more offenses are allied offenses of similar import has proven unworkable.

**{¶ 73}** In accordance with the express language of R.C. 2941.25, the conduct of a defendant should be considered in determining whether two or more offenses constitute allied offenses of similar import.

**{¶ 74}** R.C. 2941.25 provides:

**{¶ 75}** "(A) Where the same conduct by defendant can be construed to constitute two or more allied offenses of similar import, the indictment or

information may contain counts for all such offenses, but the defendant may be convicted of only one.

{¶ 76} "(B) Where the defendant's conduct constitutes two or more offenses of dissimilar import, or where his conduct results in two or more offenses of the same or similar kind committed separately or with a separate animus as to each, the indictment or information may contain counts for all such offenses, and the defendant may be convicted of all of them."

{¶ 77} In *State v. Rance*, the court articulated a new test for determining pursuant to R.C. 2941.25 whether two or more offenses are allied offenses of similar import, which instructed courts to compare the statutory elements of the offenses in the abstract, and modified our former analysis in *Newark v. Vazirani* (1990), 48 Ohio St.3d 81, 83, 549 N.E.2d 520, in which we compared the elements of the offense by reference to the particular facts alleged in the indictment ("Given the facts of this case, we find that [the two crimes charged are allied offenses of similar import]").

{¶ 78} Focusing on the elements of an offense *in the abstract,* without considering the defendant's conduct, has proven to be unworkable and has resulted in widespread confusion in the legal community among practitioners and members of the judiciary, spawning litigation to resolve this issue. That test fails to comport with the express statutory language of R.C. 2941.25(A), which directs courts to consider whether "the same *conduct* by defendant can be construed to constitute two or more allied offenses of similar import" (emphasis added), and R.C. 2941.25(B), which directs courts to consider whether the defendant's conduct constitutes two or more offense of dissimilar import or whether his conduct results in two or more offenses of the same or similar kind, committed separately or with separate animus. Thus, the proper inquiry is not whether the elements align in the abstract as stated in *Rance* but, rather, whether the defendant's conduct, i.e., the actions and behavior of the defendant, results in the

commission of two or more offenses of similar or dissimilar import or two or more offenses of the same or similar kind committed separately or with a separate animus as to each. See Black's Law Dictionary (9th Ed.2009) 336 ("conduct" defined as "[p]ersonal behavior, whether by action or inaction").

{¶ 79} Consider the crimes of rape and kidnapping, for example. The elements of each are different. Rape, as defined in R.C. 2907.02(A)(2), is committed when a defendant engages in sexual conduct with another and the defendant purposefully compels the other person to submit by force or threat of force. Kidnapping, as defined in R.C. 2905.01(A)(4), is committed when by force, threat, or deception, or, in the case of a victim under the age of 13 or mentally incompetent, by any means, a defendant removes another from the place where the other person is found or restrains the liberty of the other with the purpose to engage in sexual activity with the victim against the victim's will.

{¶ 80} Inevitably, every rapist necessarily kidnaps the victim, because the conduct of engaging in sexual conduct by force results in a restraint of the victim's liberty. Thus, in those circumstances, the conduct of the defendant can be construed to constitute two offenses — rape and kidnapping — and an indictment may contain counts for each, but the defendant may be convicted of only one.

{¶ 81} In a different factual situation, however, if the state presented evidence that a defendant lured a victim to his home by deception, for example, and then raped that victim, an indictment may contain separate counts for the rape and for the kidnapping. In this hypothetical, *different* conduct — the luring of the victim by deception and the separate act of rape — results in two offenses being committed separately; therefore, the indictments may contain counts for both offenses and the defendant may be convicted of both.[5] See, e.g., *State v. Ware*

---

5. Of course, it would be possible to indict on two counts of kidnapping, one for luring the victim and one for the rape itself.

(1980), 63 Ohio St.2d 84, 17 O.O.3d 51, 406 N.E.2d 1112 (the defendant could be convicted of both kidnapping and rape because he lured the victim to his home by deception before raping her).

**{¶ 82}** Thus, the one-size-fits-all *Rance* test directing an abstract comparison of elements failed to consider factual differences in the manner of commission of the offenses because it never factored the conduct of the actor and never allowed two offenses to be allied in some cases but not allied in other cases.[6]

**{¶ 83}** For the reasons stated, I concur in the decision to reverse and remand this matter for further consideration, and I concur in the syllabus.

LUNDBERG STRATTON, J., concurs in the foregoing opinion.

————————————

Joseph T. Deters, Hamilton County Prosecuting Attorney, and Phillip R. Cummings, Assistant Prosecuting Attorney, for appellee.

Law Offices of Ravert J. Clark and Lindsey R. Gutierrez, for appellant.

Ron O'Brien, Franklin County Prosecuting Attorney, and Steven L. Taylor, Assistant Prosecuting Attorney, urging affirmance for amicus curiae Franklin County Prosecuting Attorney.

Timothy Young, Ohio Public Defender, and Jeremy J. Masters, Assistant State Public Defender, urging reversal for amicus curiae Ohio Public Defender.

---

6. When the court decided *State v. Adams*, 103 Ohio St.3d 508, 2004-Ohio-5845, 817 N.E.2d 29, ¶ 89, which involved whether kidnapping and rape were allied offenses of similar import, the court concluded that the offenses were committed with the same animus and thus should have merged, but the opinion never cited *Rance*. Appellate courts have since noted the absence of *Rance* and the difficulty of its application. See *In re Rashid,* 163 Ohio App.3d 515, 2005-Ohio-4851, 839 N.E.2d 411, ¶ 24-25 (declining to apply *Rance* after *State v. Adams* and noting, at ¶ 33, that "[u]nder the *Rance* analysis, [the defendant] could never successfully claim, regardless of the facts of his case, that kidnapping and rape are allied offenses of similar import"); *State v. Greathouse*, 2d Dist. No. 21536, 2007-Ohio-2136, ¶ 38, 2007 WL 1297181 (after *State v. Adams*, "[c]ourts have questioned whether *Rance* is still the correct method for deciding if crimes are allied offenses").