[Cite as *State v. McDaniel*, 2014-Ohio-183.]

| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF SUMMIT | ) | |

| STATE OF OHIO | C.A. No. 26997 |
| Appellee | |
| v. | APPEAL FROM JUDGMENT ENTERED IN THE |
| MARCEL D. MCDANIEL | COURT OF COMMON PLEAS COUNTY OF SUMMIT, OHIO |
| Appellant | CASE No. CR 2002 11 3315 (A) |

DECISION AND JOURNAL ENTRY

Dated: January 22, 2014

WHITMORE, Judge.

{¶1} Defendant-Appellant, Marcel McDaniel, appeals from the judgment of the Summit County Court of Common Pleas. This Court affirms.

I

{¶2} In 2002, McDaniel was involved in a shooting at a car wash. The shooting resulted in one man (Corey Harper) dying and another (John Ellis) being struck in the head with a gun and shot at as he fled the scene. A grand jury indicted McDaniel for his involvement in the shooting. McDaniel's indictment contained the following counts: (1) felony murder with respect to Harper; (2) attempted murder with respect to Ellis; (3) felonious assault with respect to Ellis; (4) two counts of having weapons under disability; (5) improperly discharging a firearm at or into a habitation or school; (6) carrying concealed weapons; and (7) multiple firearm specifications. McDaniel went to trial along with his co-defendant, Keith Gilcreast, but the trial resulted in a hung jury with respect to McDaniel. Before another jury trial could occur,

McDaniel agreed to plead guilty in exchange for the State dismissing a variety of counts. McDaniel ultimately pleaded guilty to attempted felony murder, the firearm specification attached to that count, and felonious assault. The court sentenced McDaniel on both counts, as well as the firearm specification, for a total of 19 years in prison.

{¶3} Subsequently, McDaniel sought to withdraw his plea, the court denied his motion, and an appeal ensued. This Court dismissed the appeal and remanded the matter for a new sentencing hearing, however, due to an error in the imposition of post-release control. *See State v. McDaniel*, 9th Dist. Summit No. 24838 (Nov. 17, 2009). On remand, the trial court conducted another sentencing hearing and once again sentenced McDaniel to 19 years in prison. On appeal from that judgment, McDaniel argued that the court erred by not merging his convictions as allied offenses of similar import. Due to the issuance of *State v. Johnson*, 128 Ohio St.3d 153, 2010-Ohio-6314, this Court remanded the matter to the trial court for it to consider and apply *Johnson* in the first instance. *State v. McDaniel*, 9th Dist. Summit No. 25492, 2011-Ohio-5001, ¶ 8-10.

{¶4} On remand, the parties entered into a stipulation, regarding the facts underlying McDaniel's convictions. Because McDaniel's convictions were the result of a guilty plea, the parties stipulated that the facts contained in the transcript of McDaniel's original jury trial (which had resulted in a hung jury) would represent the facts underlying his convictions. The parties agreed that they would brief the allied offense issue based on those facts, and the trial court would issue a ruling after considering their briefs in light of *Johnson*. Thereafter, both parties filed their respective briefs.

{¶5} The trial court determined that McDaniel's counts were not allied offenses. The court issued an entry providing that, because it had determined that the counts were not allied,

"there [was] no need to resentence [McDaniel]." McDaniel attempted to appeal from the court's entry, but this Court dismissed the appeal for lack of jurisdiction. *See State v. McDaniel*, 9th Dist. Summit No. 26415 (Apr. 9, 2013). The trial court then issued another entry, confirming its ruling that McDaniel's convictions were not allied offenses and sentencing McDaniel to 19 years in prison.

{¶6} McDaniel now appeals and raises a single assignment of error for our review.

II

Assignment of Error

THE TRIAL COURT ERRED IN FINDING THAT THE OFFENSES OF ATTEMPTED MURDER AND FELONIOUS ASSAULT WERE NOT ALLIED OFFENSES OF SIMILAR IMPORT.

{¶7} In his sole assignment of error, McDaniel argues that the trial court erred by failing to merge his attempted felony murder and felonious assault convictions for purposes of sentencing, as they are allied offenses of similar import. We disagree.

{¶8} "R.C. 2941.25 codifies the protections of the Double Jeopardy Clause of the Fifth Amendment to the United States Constitution and Section 10, Article I of the Ohio Constitution, which prohibits multiple punishments for the same offense." *State v. Underwood*, 124 Ohio St.3d 365, 2010-Ohio-1, ¶ 23. That statute provides as follows:

(A) Where the same conduct by defendant can be construed to constitute two or more allied offenses of similar import, the indictment or information may contain counts for all such offenses, but the defendant may be convicted of only one.

(B) Where the defendant's conduct constitutes two or more offenses of dissimilar import, or where his conduct results in two or more offenses of the same or similar kind committed separately or with a separate animus as to each, the indictment or information may contain counts for all such offenses, and the defendant may be convicted of all of them.

R.C. 2941.25. "When [a] plea agreement is silent on the issue of allied offenses of similar import, * * * the trial court is obligated under R.C. 2941.25 to determine whether the offenses

are allied, and if they are, to convict the defendant of only one offense." *Underwood* at ¶ 29. An appellate court applies "a de novo standard of review in reviewing a trial court's R.C. 2941.25 merger determination." *State v. Williams*, 134 Ohio St.3d 482, 2012-Ohio-5699, ¶ 28.

{¶9} Two or more offenses may result in multiple convictions if: (1) they are offenses of dissimilar import; (2) they are separately committed; or (3) the defendant possesses a separate animus as to each. *State v. Washington*, Slip Opinion No. 2013-Ohio-4982, ¶ 12. The first step of the analysis requires a court to consider the import of the offenses (i.e., whether they are of similar or dissimilar import). *Id.* at ¶ 13. The import analysis entails more than an abstract review of the elements of the offenses involved. *Id.* at ¶ 16, citing *Johnson*, 128 Ohio St.3d 153, 2010-Ohio-6314. In undertaking the import analysis, "the conduct of the accused must be considered." *Washington* at ¶ 15, quoting *Johnson* at syllabus. *See also Johnson* at ¶ 48 ("[T]he question is whether it is possible to commit one offense *and* commit the other with the same conduct * * *.").

{¶10} The second step of the analysis requires a court to consider whether the offenses at issue "were committed separately or with a separate animus." *Washington* at ¶ 13. *See also Johnson* at ¶ 49 ("If the multiple offenses can be committed by the same conduct, then the court must determine whether the offenses were committed by the same conduct * * *."). In applying the second step of the analysis, "a court must review the entire record, including arguments and information presented at the sentencing hearing." *Washington* at ¶ 24. "If the offenses were committed by the same conduct and with a single animus, the offenses merge." *Id.* at ¶ 13.

{¶11} "[W]here one criminal act has been committed which results in harm to multiple victims, the Ohio Supreme Court has found such offenses to constitute crimes of dissimilar import." *State v. Jackson*, 9th Dist. Summit No. 26757, 2013-Ohio-5557, ¶ 29, citing *State v.*

*Franklin*, 97 Ohio St.3d 1, 2002-Ohio-5304, ¶ 48, and *State v. Jones*, 18 Ohio St.3d 116, 118 (1985). *Accord* R.C. 2941.25, Legislative Service Commission Note (1973) ("[A]n armed robber who holds up a bank and purposely kills two of the victims can be charged with and convicted of one count of aggravated robbery and of two counts of aggravated murder. Robbery and murder are dissimilar offenses, and each murder is necessarily committed with a separate animus * * *."). In *Jackson*, this Court applied *Washington* and specifically held that a defendant's convictions for murder and felonious assault should not have merged because they "involve[d] different victims." *Id.* Here, as in *Johnson*, McDaniel's murder and felonious assault counts involved different victims.

{¶12} At the original trial, Ellis testified that he, Harper, and another friend, Michael Marshall, took Harper's car to a car wash to vacuum it. Both Ellis and Harper were standing at different spots outside the car searching for change to operate the vacuum when Ellis dropped his change and bent down to pick it up. Ellis testified that, when he stood back up, a man was standing next to him with a gun. Ellis' arm batted at the gun, which struck his head and discharged. Ellis then ran through one of the bays of the car wash to the fence behind the car wash and hid behind a dumpster. As he ran, Ellis heard multiple gunshots and saw sparks coming off the wall of the car wash bay as a bullet ricocheted off the wall. There was testimony at trial that the fence Ellis ran to appeared to have several bullet holes in it. Additionally, there was testimony that a bullet shattered the window of a house, which was in a direct line with the direction Ellis was running. The bullet recovered from the house was a .380 caliber bullet. The police also found numerous .380 shell casings on the ground in the vicinity of Harper's car.

{¶13} In addition to the .380 shell casings, the police also found several .45 caliber casings near the back of Harper's car. Harper's body was discovered lying on the ground behind

his car.  There was testimony from the Summit County Medical Examiner's Office that Harper died as a result of a single gunshot wound to his chest.  Dr. Sterbenz testified that the wound was a contact-range wound, meaning that the muzzle of the firearm that killed Harper was pressed against his chest when it was fired.  Marshall, the other man in Harper's car, testified that he saw two men near Harper's car before the shooting commenced.  He specified that he saw one man near Ellis with a gun, but that the other had walked around the other side of the car.

{¶14}  In Count One of his indictment, McDaniel was indicted for felony murder.  The felony murder count averred that McDaniel "cause[d] the death of Corey Harper, as a proximate result of * * * committing or attempting to commit Felonious Assault."  In Count Two of his indictment, McDaniel was indicted for felonious assault.  The felonious assault count averred that McDaniel "knowingly caus[ed] or attempt[ed] to cause physical harm to John R. Ellis, by means of a deadly weapon or dangerous ordnance."  McDaniel ultimately pleaded guilty to both counts after Count One was amended.  In its original sentencing entry, the trial court wrote:

> Upon Motion of the Prosecuting Attorney on behalf of the State of Ohio, the Court hereby amends Count 1 of the Indictment to the lesser and included offense of ATTEMPTED MURDER, a felony of the first (1st) degree.

> Thereupon, [McDaniel] retracts his plea of Not Guilty heretofore entered, and for plea to said indictment, says he is GUILTY of ATTEMPTED MURDER, as contained in the amended Count 1 of the Indictment, GUILTY of the [FIREARM] SPECIFICATION ONE TO COUNT ONE * * *, and GUILTY of FELONIOUS ASSAULT, as contained in Count 2 of the Indictment, which offenses all occurred after July 1, 1996, which pleas, voluntarily made and with a full understanding of the consequences, were accepted by the Court.

McDaniel, therefore, pleaded guilty to attempted felony murder and felonious assault with regard to two different victims (Harper and Ellis).

{¶15}  Consistent with his argument in the court below, McDaniel dedicates much of his brief to a discussion about the evidence in support of his guilt.  Specifically, he argues that there

was no evidence that he ever possessed a gun or shot at anyone. McDaniel's guilty plea, however, was "a complete admission of [his] guilt." Crim.R. 11(B)(1). He cannot now assert that he did not, in fact, commit the crimes to which he pleaded guilty.

{¶16} McDaniel also argues that because his indictment was defective and his plea amounted to "a definite legal fiction," this Court cannot rely strictly upon the wording of his indictment and his plea to the same in considering his allied offense argument. McDaniel claims that his indictment was defective because, while he was indicted for the felony murder of Harper (Count One), he was never indicted for that count's stated predicate offense of felonious assault with regard to Harper. McDaniel was only indicted for felonious assault with regard to Ellis. He further argues that the amended Count One to which he pleaded "did not include victim Corrie (sic) Harper." According to McDaniel, "[a]t the time that he pled, the trial court did not address McDaniel as to the nature of the charges of [amended Count One]. It was unclear to [McDaniel] that he was pleading to a charged (sic) involving victim Harper." McDaniel claims that he never pleaded guilty to two offenses involving separate victims. In essence, McDaniel asks this Court to infer that his plea to attempted felony murder and felonious assault both related to the same victim (Ellis). He also argues that his plea to attempted felony murder was a legal fiction because attempted felony murder "is not a cognizable offense in the state of Ohio."

{¶17} By pleading guilty, McDaniel "waive[d] any deficiency in the indictment." *State v. Mose*, 9th Dist. Medina No. 11CA0083-M, 2013-Ohio-635, ¶ 10. *See also State v. Wheeler*, 9th Dist. Summit No. 25183, 2011-Ohio-1521, ¶ 3-6. Accordingly, he cannot now challenge any alleged defects in his indictment. Similarly, he cannot attack his plea at this late stage of the litigation. In McDaniel's most recent appeal, this Court remanded the matter strictly for the trial court to consider and apply *Johnson*. *See McDaniel*, 2011-Ohio-5001, at ¶ 6-13. The time for

any challenge to the validity of McDaniel's plea has long since passed. *See State v. Gorospe*, 9th Dist. Nos. 25551 & 25552, 2011-Ohio-3291, ¶ 10 (challenges to validity of plea barred by res judicata); *State v. O'Neal*, 9th Dist. No. 2008-Ohio-1325, ¶ 11 (law of the case doctrine applied when defendant sought to withdraw his plea after a remand for resentencing).

{¶18} Although McDaniel pleaded guilty to an amended version of Count One of his indictment, the record does not support McDaniel's assertion that the amendment to Count One included an amendment to the victim named therein. The court's original sentencing entry only indicates that the State amended Count One from felony murder to "the lesser and included offense of ATTEMPTED [FELONY] MURDER." The entry makes no reference to any other amendment to Count One. Additionally, nothing in the transcript from McDaniel's plea hearing points to the State having amended the named victim in Count One. To the contrary, numerous people at the hearing gave victim impact statements related to Harper in which they blamed McDaniel for Harper's murder. Had McDaniel's amended murder count related to Ellis, that testimony would have been misplaced. Moreover, had the State intended for McDaniel to plead guilty to the attempted murder of Ellis, it could have dismissed Count One instead of Count Seven. Count Seven of the indictment specifically charged McDaniel with the attempted murder of Ellis, but that charge was dismissed when McDaniel pleaded guilty.

{¶19} The record reflects that McDaniel pleaded guilty to the attempted felony murder of one victim (Harper) and to the felonious assault of a second victim (Ellis). His crimes, therefore, involved harm to two separate victims and were of dissimilar import. *See Jackson*, 2013-Ohio-5557, at ¶ 29. The trial court did not err by refusing to merge his convictions as allied offenses of similar import. McDaniel's sole assignment of error is overruled.

III

{¶20} McDaniel's assignment of error is overruled. The judgment of the Summit County Court of Common Pleas is affirmed.

Judgment affirmed.

———

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellant.

BETH WHITMORE
FOR THE COURT

HENSAL, J.
CONCUR.

BELFANCE, P. J.
CONCURS IN JUDGMENT ONLY.

APPEARANCES:

JANA DELOACH, Attorney at Law, for Appellant.

SHERRI BEVAN WALSH, Prosecuting Attorney, RICHARD S. KASAY, Assistant Prosecuting Attorney, for Appellee.