[Cite as *State v. Carver*, 2011-Ohio-5955.]

IN THE COURT OF APPEALS OF MONTGOMERY COUNTY, OHIO

STATE OF OHIO                        :

     Plaintiff-Appellee          :    C.A. CASE NO. 24400

vs.                                  :    T.C. CASE NO. 03CR3323

KYLE CARVER                          :    (Criminal Appeal from
                                           Common Pleas Court)
     Defendant-Appellant         :

. . . . . . . . .

# O P I N I O N

Rendered on the 18th day of November, 2011.

. . . . . . . . .

Mathias H. Heck, Jr., Pros. Attorney; Andrew T. French, Asst. Pros. Attorney, Atty. Reg. No. 0069384, P.O. Box 972, Dayton, OH 45422

    Attorneys for Plaintiff-Appellee

Barry W. Wilford, Atty. Reg. No. 0014891, 492 City Park Avenue, Columbus, OH 43215
    Attorney for Defendant-Appellant

. . . . . . . . .

GRADY, P.J.:

{¶ 1} Defendant, Kyle Carver, appeals from a de novo resentencing hearing the trial court conducted pursuant to *State v. Singleton*, 124 Ohio St.3d 173, 2009-Ohio-6434, in order to properly impose post release control.

{¶2} The facts of this case were set forth in our previous opinion, *State v. Carver*, Montgomery App. No. 21328, 2008-Ohio-4631, as follows:

{¶3} "{¶ 13} In late August 2003, Carver and 'M' were living together in M's apartment in Dayton. They had met in March or April of 2003 when both were working for a telecommunications company, and they began dating in early August. Carver was approximately forty years old, approximately fourteen years older than M.

{¶4} "{¶ 14} On August 28, 2003, Carver picked up M from work, and they returned to the apartment. There, M discovered that her television was missing. Carver told her that he had pawned the television to get money. According to M, they argued and she later found a pawn ticket from Don's Pawn Shop in the car. At some point, Carver pulled out a crack pipe, lit it up, and had M watch him smoke it. Around 9:00 p.m., Carver left, saying that he was going to try to make some money to get her television back. Carver later returned with a cousin, J.R., and Carver and M 'had a few more words.' Carver grabbed M's car keys, which were for a Chevrolet Cavalier owned by M's mother, and he left. M stated she thought he had left at approximately 3:00 a.m.

{¶5} "{¶ 15} At approximately 3:00 a.m. on August 29, 2003, 'B,' M's mother, was awakened by someone banging on the door to her apartment. B testified that she initially did not know who

was at the door and she threatened to call the police if the person did not leave. However, she then heard the mail slot open and Carver's voice say, 'Mom, it's Kyle, I need to talk to you about [M].' B let Carver into her apartment.

{¶ 6} "{¶ 16} After entering, Carver got a glass of water and sat on the couch in the living room. Carver told B that 'this isn't really about [M]' and he started to unbutton his shirt. B tried to stand and move away, but Carver grabbed her and pulled her back down to the couch. B testified that Carver put his hand on her throat and threatened to strangle her if she screamed or made noise. Carver continued to undress and told her that 'he was going to give [her] what [she] wanted.' Carver then led B to her bedroom, where he performed oral sex on her and had vaginal intercourse. Afterwards, Carver and B returned to the living room so Carver could smoke a cigarette; B also smoked a cigarette.

{¶ 7} "{¶ 17} B testified that she thought Carver would leave at that point. Instead, after approximately twenty minutes, Carver took B back to her bedroom, where they had vaginal intercourse again. B stated that she tried to prevent Carver from turning her over for anal intercourse by putting her legs around him. Carver then put his fingers in her rectum. Carver and B returned to the living room for more cigarettes, and Carver began to pull his pants up. However, he apparently changed his mind and choked B until

she was almost rendered unconscious. Afterward, Carver dragged B back to the bedroom and had vaginal intercourse for a third time.

{¶ 8} "{¶18} Carver again went back to living room. There, Carver pulled out a crack pipe, lit it, and smoked it. Carver told B: 'This is the reason I do stuff like this. I have a habit. This makes me * * * do the bad things.' Carver then stated that he had to go home and tell M. Carver took B's cell phone and her keys to the Cavalier. Carver started to hand B her cell phone, but then stated, 'I'll leave it out there on the dumpster and that'll give me some time.' B testified that Carver left at approximately 6:00 a.m. B and M both testified that Carver did not have permission to use the vehicle.

{¶ 9} "{¶ 19} After Carver left her apartment, B crawled to a neighbor's apartment, and the police were called. B was transported to Good Samaritan Hospital, where she gave a statement to a sheriff's deputy and a rape kit was completed, primarily by Julia Rismiller, a registered nurse. Photographs were taken of B's neck, which was red. Several witnesses testified that B's voice sounded raspy and hoarse in the hospital.

{¶ 10} "{¶ 20} According to Mark Squibb of the Miami Valley Regional Crime Laboratory, spermatozoa and semen were found on the vaginal and anal swabs. After Carver provided a DNA sample in February 2005, Squibb identified Carver as the source of the

semen on the vaginal swab. No DNA analysis was performed on the anal swab.

{¶ 11} "{¶ 21} B's car was recovered in September 2003 in Greensboro, North Carolina, after it was involved in an accident. M testified that Carver had a son who lived in Greensboro. In 2005, Carver was ultimately arrested in Pennsylvania and returned to Ohio.

{¶ 12} "{¶ 22} Carver did not present any evidence at trial. However, his counsel asserted during opening statements that Carver and B had engaged in consensual intercourse. Defense counsel's cross-examination also emphasized that B was taking several psychotropic medications at the time of the alleged sexual assault."

{¶ 13} In 2005 Defendant was indicted on one count of unauthorized use of a motor vehicle, R.C. 2913.03(B), five counts of rape, R.C. 2907.02(A)(2), one count of gross sexual imposition, R.C. 2907.05(A)(1), one count of kidnapping, R.C. 2905.01(A)(4), and one count of felonious assault, R.C. 2903.11(A)(1). Following a jury trial, Defendant was found not guilty on four of the rape charges, and the jury was unable to agree on a verdict on one of the rape charges and the gross sexual imposition charge, which resulted in the trial court declaring a mistrial on those offenses. Defendant was found guilty of unauthorized use of a motor vehicle,

kidnapping, and felonious assault. The trial court sentenced Defendant to consecutive prison terms of twelve months for unauthorized use of a motor vehicle, ten years for kidnapping, and eight years for felonious assault, for a total sentence of nineteen years.

{¶ 14} We affirmed Defendant's conviction and sentence on direct appeal. *State v. Carver*, Montgomery App. No. 21328, 2006-Ohio-5798. We subsequently granted Defendant's motion to reopen his appeal, and once again affirmed his conviction and sentence. *State v. Carver*, Montgomery App.No. 21328, 2008-Ohio-4631. At no time in either his initial direct appeal or in his reopened appeal did Defendant ever raise an allied offenses issue regarding his kidnapping and felonious assault convictions.

{¶ 15} On May 14, 2010, Defendant filed a motion in accordance with then controlling law, *State v. Singleton*, 124 Ohio St.3d 173, 2009-Ohio-6434, seeking a de novo re-sentencing hearing because the trial court failed to properly impose post release control. The trial court granted Defendant's motion for resentencing. On December 1, 2010, Defendant filed a motion to dismiss the kidnapping charge based upon double jeopardy and the allied offenses statute, R.C. 2941.25. The issue Defendant raised pertained to the relationship between the kidnapping and the rape

charges, not the kidnapping and the felonious assault charge. On December 3, 2010, the trial court conducted a de novo resentencing hearing. The court overruled Defendant's motion to dismiss the kidnapping charge, and reimposed the same prison terms originally imposed. The court also imposed the appropriate terms of post release control applicable to each of Defendant's offenses.

{¶ 16} Defendant timely appealed to this court from his re-sentencing.

**ASSIGNMENT OF ERROR**

{¶ 17} "THE TRIAL COURT ERRED BY FAILING TO FIND THAT THE OFFENSES OF KIDNAPPING AND FELONIOUS ASSAULT WERE ALLIED OFFENSES UNDER R.C. § 2941.25, AND MERGED FOR CONVICTION AND SENTENCING PURPOSES."

{¶ 18} In his sole assignment of error, Defendant argues that the trial court erred in sentencing him for both kidnapping and felonious assault because those are allied offenses of similar import that must be merged pursuant to R.C. 2941.25 and the rule of *State v. Johnson*, 128 Ohio St.3d 153, 2010-Ohio-6314.

{¶ 19} Defendant was found guilty of kidnapping in violation of R.C. 2905.01(A)(4), which provides:

{¶ 20} "No person, by force, threat, or deception, or, in the case of a victim under the age of thirteen or mentally incompetent, by any means, shall remove another from the place where the other

person is found or restrain the liberty of the other person, for any of the following purposes:

{¶ 21} "To engage in sexual activity, as defined in section 2907.01 of the Revised Code, with the victim against the victim's will."

{¶ 22} Defendant was also found guilty of felonious assault in violation of R.C. 2903.11(A)(1), which provides:

{¶ 23} "No person shall knowingly do either of the following:

{¶ 24} "Cause serious physical harm to another or to another's unborn[.]"

{¶ 25} In discussing allied offense of similar import, we stated in *State v. Freeders*, Montgomery App. No. 23952, 2011-Ohio-4871:

{¶ 26} "{¶ 13} The Double Jeopardy Clause of the United States Constitution, which applies to the States through the Fourteenth Amendment prohibits multiple punishments for the same offense. *State v. Brown*, 119 Ohio St.3d 447, 2008-Ohio-4569, at ¶10. However, the Double Jeopardy Clause only prohibits a sentencing court from prescribing greater punishment than the legislature intended. *Id.*, at ¶11. The two-tiered test set forth in R.C. 2941.25, Ohio's multiple count statute, resolves both the constitutional and state statutory inquiries regarding the General Assembly's intent to permit cumulative punishments for the same conduct. *Id.*, at ¶12. However, it is not necessary to resort to that test when

the legislature's intent to impose multiple punishments is clear from the language of the statute. *Id.*, at ¶37.

{¶ 27} "{¶ 14} Ohio's multiple counts statute, R.C. 2941.25, provides:

{¶ 28} "{¶ 15} '(A) Where the same conduct by defendant can be construed to constitute two or more allied offenses of similar import, the indictment or information may contain counts for all such offenses, but the defendant may be convicted of only one.'

{¶ 29} "{¶ 16} '(B) Where the defendant's conduct constitutes two or more offenses of dissimilar import, or where his conduct results in two or more offenses of the same or similar kind committed separately or with a separate animus as to each, the indictment or information may contain counts for all such offenses, and the defendant may be convicted of all of them.'

{¶ 30} "{¶ 17} In *State v. Johnson*, 128 Ohio St.3d 153, 2010-Ohio-6314, the Ohio Supreme Court announced a new test for determining when offenses are allied offenses of similar import that must be merged pursuant to R.C. 2941.25. *Johnson* overruled the previous test announced in *State v. Rance* (1999), 85 Ohio St.3d 632, and held: 'When determining whether two offenses are allied offenses of similar import subject to merger under R.C. 2941.25, the conduct of the accused must be considered.' Id. at syllabus. The Supreme Court explained its holding at ¶47-51, stating:

{¶ 31} "{¶ 18} 'Under R.C. 2941.25, the court must determine prior to sentencing whether the offenses were committed by the same conduct. Thus, the court need not perform any hypothetical or abstract comparison of the offenses at issue in order to conclude that the offenses are subject to merger.'

{¶ 32} "{¶ 19} 'In determining whether offenses are allied offenses of similar import under R.C. 2941.25(A), the question is whether it is possible to commit one offense *and* commit the other with the same conduct, not whether it is possible to commit one *without* committing the other. *Blankenship*, 38 Ohio St.3d at 119, 526 N.E.2d 816 (Whiteside, J., concurring) ("It is not necessary that both crimes are always committed by the same conduct but, rather, it is sufficient if both offenses *can be* committed by the same conduct. It is a matter of possibility, rather than certainty, that the same conduct will constitute commission of both offenses." [Emphasis sic]). If the offenses correspond to such a degree that the conduct of the defendant constituting commission of one offense constitutes commission of the other, then the offenses are of similar import.'

{¶ 33} "{¶ 20} 'If the multiple offenses can be committed by the same conduct, then the court must determine whether the offenses were committed by the same conduct, i.e., "a single act, committed with a single state of mind." *Brown*, 119 Ohio St.3d 447,

2008-Ohio-4569, 895 N.E.2d 149, at ¶ 50 (Lanzinger, J.,dissenting).'

{¶ 34} "{¶ 21} 'If the answer to both questions is yes, then the offenses are allied offenses of similar import and will be merged.'

{¶ 35} "{¶ 22} 'Conversely, if the court determines that the commission of one offense will *never* result in the commission of the other, or if the offenses are committed separately, or if the defendant has separate animus for each offense, then, according to R.C. 2941.25(B), the offenses will not merge.'

{¶ 36} "{¶ 23} *Johnson* is a welcome relief from the abstractions of *Rance* and is more consistent with R.C. 2941.25 in that the tests it imposes apply to the conduct in which the defendant actually engaged. If that conduct can be construed to violate two or more sections of the criminal code, the offenses involved are allied offenses of similar import per R.C. 2941.25(A). The offenses must then be merged unless the conduct in which Defendant engaged was committed separately or with a separate animus as to each offense. R.C. 2941.25(B)."

{¶ 37} Defendant Carver argues that his offenses of kidnapping and felonious assault are allied offenses of similar import that must be merged pursuant to R.C. 2941.25, because in placing his hands around B's neck and then choking her to the point of

unconsciousness, he acted for the same purpose, which was to engage in sexual activity with B. Therefore, he acted with but a single animus, and his acts involved the same conduct.

{¶ 38} We agree with Defendant that, under the rule of *State v. Logan* (1979), 60 Ohio St.2d 126, his kidnapping and felonious assault charges were committed with the same animus, to the extent that they are limited to engaging in that particular conduct, because the restraint was merely incidental to the act of choking B. However, that was not the only act of restraint B's conduct involved.

{¶ 39} Over the entire three-hour episode, Defendant restrained B multiple times, all for the purpose of engaging in sexual activity with her. Those kidnapping by restraint offenses, though committed for the same purpose as the later kidnapping and felonious assault, had a significance independent of the felonious assault. *Logan*. Furthermore, they were committed separately from the restraint that later kidnapping involved. The jury could find Defendant guilty of kidnapping in violation of R.C. 2905.01(A)(4) on the basis of evidence it heard concerning any one of those prior, separate restraints. Being committed separately, those kidnapping offenses do not merge with the later felonious assault.

{¶ 40} Defendant's sole assignment of error is overruled. The judgment of the trial court will be affirmed.

FAIN, J., And HALL, J., concur.


Copies mailed to:

Andrew T. French, Esq.
Barry W. Wilford, Esq.
Hon. Barbara P. Gorman