[Cite as *State v. Kilby*, 2013-Ohio-5340.]

IN THE COURT OF APPEALS FOR MONTGOMERY COUNTY, OHIO

STATE OF OHIO                              :

    Plaintiff-Appellant                :          C.A. CASE NO.     25650

v.                                         :          T.C. NO.     2011-9469

MARY KILBY                                 :          (Appeal from Common
                                                       Pleas Court, Juvenile Division)

    Defendant-Appellee                 :

                                           :

        . . . . . . . . . .

**O P I N I O N**

Rendered on the _____6th_____ day of _____December_____, 2013.

        . . . . . . . . . .

R. LYNN NOTHSTINE, Atty. Reg. No. 0061560, Assistant Prosecuting Attorney, 301 W. Third Street, 5th Floor, Dayton, Ohio 45422
      Attorney for Plaintiff-Appellant

RICHARD HEMPFLING, Atty. Reg. No. 0029986, 15 W. Fourth Street, Suite 100, Dayton, Ohio 45402
      Attorney for Defendant-Appellee

        . . . . . . . . . .

DONOVAN, J.

    **{¶ 1}** This matter is before the Court on the Notice of Appeal of the State of

Ohio,

filed February 22, 2013. The State appeals from the February 7, 2013 decision of the Juvenile Court that granted Mary Kilby's motion to dismiss one count of failure to report child abuse or neglect. We hereby reverse the judgment of the juvenile court.

{¶ 2} Kilby was initially indicted, on November 17, 2011, in the Montgomery County Court of Common Pleas, for one count of failing to provide for a functionally impaired person, in violation of R.C. 2903.16(B)(recklessly), a felony of the fourth degree, and one count of failure to report child abuse or neglect, in violation of R.C. 2151.421(A)(1)(a), a misdemeanor of the first degree. On November 21, 2011, Kilby was charged by way of complaint in juvenile court, with one count of failure to report child abuse or neglect. On November 22, 2011, the charge of failure to report child abuse or neglect pending in the court of common pleas was nolled without prejudice, due to the charge being refiled in juvenile court. On April 11, 2012, Kilby was indicted in the court of common pleas on one count of failing to provide for a functionally impaired person, in violation of R.C. 2903.16(A)(knowingly), a felony of the fourth degree.

{¶ 3} On September 14, 2012, Kilby entered no contest pleas to one count of failing to provide for a functionally impaired person, in violation of R.C. 2903.16(A), and one count of failing to provide for a functionally impaired person, in violation of R.C. 2903.16(B). On October 25, 2012, Kilby was sentenced to five years of community control sanctions.

{¶ 4} On October 29, 2012, following a status conference, the Juvenile Court issued an Entry and Order Setting Dates for Submission of Briefs, which provides that an "oral motion to dismiss was made by defense counsel on the grounds of double jeopardy.

Defense counsel argues that the case in Juvenile Court should merge with the case in the General Division, in which sentence has previously been issued by Judge Huffman." The juvenile court directed the parties to brief the double jeopardy issue.

{¶ 5} In her memorandum in support of her motion to dismiss, Kilby asserted that her conviction in the General Division barred her prosecution in juvenile court because the test for allied offenses of similar import, pursuant to *State v. Johnson*, 128 Ohio St.3d 153, 2010-Ohio-6314, 942 N.E.2d 1061, has been met. Kilby directed the juvenile court's attention to the Bill of Particulars filed by the State in the General Division, which she attached to her memorandum. The Bill of Particulars provides as follows:

* * *

The conduct of the defendant alleged to constitute the offenses in both counts is as follows: Between March 17, 2010 through March 1, 2011, the defendant was a licensed registered nurse employed by Care Star and charged with the responsibility in that employment position of managing Makayla's care under her care plan and/or All Services Plan ensuring that her care plan and/or All Services Plan was being followed, including personally visiting and assessing Makayla Norman in Makayla's home at 707 Taylor Street in Dayton, Montgomery County, Ohio, every six months, in order to ensure both Makayla's health and safety and that Makayla's other caretakers were in compliance with Makayla's care plan and/or All Services Plan. Fourteen-year-old Makayla Norman was a lifelong mentally handicapped quadriplegic with cerebral palsy who could not stand, walk, speak, or

swallow food. She was totally dependent on her caretakers, of which the defendant was one. As far back as March 17, 2010 - almost a year before Makayla's death - the defendant was alerted to the deplorable living conditions of the home in which Makayla was living at 707 Taylor Street.

The defendant, as a registered nurse assigned to Makayla's case, also understood medically Makayla's physical diagnosis, the physical ailments that could come with such diagnoses, the nature of what those diagnoses required in terms of her medical care and treatment, and also the importance of Makayla's proper care by her caretakers. She was also the assigned case manager of Makayla's care plan and/or All Services Plan and knew what that entailed for ensuring that Makayla received the treatment, care, goods and services that she was supposed to receive under Medicaid.

The defendant's last personal visit with and assessment of Makayla at 707 Taylor Street occurred on February 24, 2011, just five days prior to Makayla's death. The defendant did not provide or seek out any treatment, service, or goods for (or even report to local authorities) Makayla's visible signs of neglect and deplorable living conditions at that time, nor did the defendant care for any of the numerous visible physical injuries and signs of neglect to Makayla herself, including: Makayla having an extremely emaciated face and body, weighing only 28 pounds at autopsy; unbandaged bedsores all over her body; some filled with feces and dirt and some showing scarring; adult lice in her hair and eyebrows; long-standing dirt that could not

be entirely washed off with a scrubbing at the coroner's office; a two-inch impacted rectum; an interior pelvic area obstructed by a dilated colon filled with feces which had begun to block one of her kidneys; teeth riddled with plaque and a build up of thick dry secretions on her tongue due to a lack of daily oral care; and pneumonia in both lungs - any, some or all of which the defendant, as a trained and experienced registered nurse familiar with Makayla's condition and charged with the responsibility of ensuring that Makayla was receiving the care she should have received under her care plan and/or All Services Plan as well as Medicaid, should have detected during the defendant's personal visit just five days prior to Makayla's death. The cause of death was determined to be nutritional and medical neglect, with the death being contributed to by complications of cerebral palsy. The manner of death was ruled a homicide.

* * *

Therefore, notwithstanding the defendant's knowledge, training, and employment position as a registered nurse and case manager for Makayla Norman, the defendant recklessly and knowingly failed to provide treatment, care, goods, and/or services to Makayla which resulted in serious physical harm and Makayla's death on March 1, 2011. That is, the defendant, as a registered nurse and caretaker to Makayla, failed to follow up and/or act adequately on reports of deplorable conditions in the home from when she was alerted to a problem with the home March 17, 2010 to Makayla's death

on March 1, 2011, failed to adequately assess Makayla and her living conditions in visits during that time frame, failed to detect the visible signs of neglect to Makayla and resulting medical danger to Makayla in her last assessment just five days before Makayla's death, and failed to care for Makayla under the care plan and/or All Services Plan as well as ensure that other caretakers were caring for Makayla - all of which she had the training and responsibility to do as a registered nurse and case manager with Care Star assigned to Makayla.

**{¶ 6}** Regarding the assertion that Makayla was dependent upon her, Kilby asserted as follows:

Hence, the allegations that Mrs. Kilby was a "caretaker," and Makayla Norman was a "functionally impaired person" as required under R.C. 2903.16(A). These facts, of course, also would constitute elements required to be proven in this Court with regard to the charge under R.C. 2151.421, i.e., that Mrs. Kilby was a "registered nurse," "acting in an official or professional capacity," and that Makayla was "a child under eighteen years of age or a mentally retarded, developmentally disabled, or physically impaired child under twenty-one years of age."

**{¶ 7}** Kilby further asserted as follows:

The Bill of Particulars goes on to graphically describe, in the words of the State, "deplorable living conditions" in Makayla's home, as well as "numerous visible physical injuries and signs of neglect to Makayla herself,"

and that Mrs. Kilby knew or should have known of the existence of these matters. This, of course, satisfies not only the "knowingly" element of the felony offense, but also the requirement under R.C. 2151.421 that the offender "knows or has reasonable cause to suspect" that the child is an abused or neglected child.

As for the "conduct" described in the Bill of Particulars, *i.e.*, the failure to provide "treatment, care, goods, or service . . . necessary to maintain the health or safety" of Makayla, the state is less precise. Nevertheless, the State's theory clearly included an assertion that at or following Mrs. Kilby's last visit to Makayla's home on February 24, 2011, she "did not provide or seek out any treatment, services, or goods for (or even report to authorities) Makayla's visible signs of neglect and deplorable living conditions at that time . . ." * * * Further at page 6 of its Sentencing Memorandum filed on October 23, 2012, * * * when arguing causation, the S[t]ate asserted and explained that "[a]t a minimum, the defendant caused Makayla to suffer physical pain between February 25 and March 1, 2011 by not calling authorities to get her admitted to a hospital." This, of course clearly corresponds with the remaining allegations of the prosecution in this Court, *i.e.*, that Mrs. Kilby failed to report abuse or neglect to the proper authorities, thereby causing harm to Makayla.

Finally, lest there be any doubt that the instant charge of failing to report abuse or neglect was subsumed within the previous conviction for failing to provide for a functionally impaired person, the S[t]ate's only sentencing request is

very instructive. At the conclusion of that Sentencing Memorandum, the State had this to say:

> The State would also ask that the defendant be required to lecture nurses about the dangers of evading and ignoring their duty to report child abuse and/or neglect, particularly when there are clear signs of the need to do so.

{¶ 8} According to Kilby's memorandum, the "forgoing amply demonstrates that it is possible to commit both offenses with the same conduct (here, failure to act), that the evidence would, in fact show the same conduct, and that there would not and could not be any showing of a separate 'animus' or state of mind."

{¶ 9} The State responded in part as follows:

* * * The charge of Failing to Provide for a Functionally Impaired Person accuses the defendant of being the person not to provide the care to Makayla Norman over the course of the indictment period from March 2010 to the date of the defendant's last visit to the home of Makayla on February 24, 2011. At her last home-visit and examination/assessment of Makayla on February 24, 2011, the defendant had the medical training as a registered nurse to identify and treat bedsores, an impacted rectum, lice living in Makayla's hair, eyelashes and eyebrows, among other physical ailments. The defendant further had the experience and training to look for the beginning signs of pneumonia or existing pneumonia. The defendant further had the experience and training to clean Makayla's numerous open wounds and filthy body. However, the defendant

provided none of this care to Makayla, nor arranged to have additional medical care provided to Makayla to help with these conditions.

In the count of Failing to Report Child Abuse and Neglect, the defendant is charged with not reporting the egregious neglect of Makayla Norman by other defendants on February 24, 2011, specifically. In essence, she is charged with not picking up the phone to report to the children's services bureau or local law enforcement what should have been obvious the minute the defendant walked in the door of 707 Taylor Street on February 24, 2011, and saw the horrific state of Makayla's body and living conditions. For this defendant specifically, the conditions of the home alone should have

been reason to make the mandatory report since in March 2010 she had personally put Makayla's mother, daily nurse Mollie Parsons as well as the agency for which Mollie Parsons worked on notice that the home conditions were not acceptable to her.

{¶ 10} The State asserted that each failure to act, namely failing to minister to Makayla's needs and failing to contact authorities, "constituted separate conduct." The State asserted that Kilby's failure to provide care "is a separate decision and act than failing to pick up the phone to report the neglect to Makayla caused by Makayla's mother and her daily nurse, among others on February 24, 2011 specifically." According to the State, the fact that Kilby's "failure to report the neglect of Makayla had the additional benefit of covering up her own failure to provide care and services, does not change the fact that the animus behind the failure to provide care and services and failure to report were separate and distinct." The State asserted that "the offense of

Failing to Provide for a Functionally Impaired Person is not an allied offense of Failing to Report Child Abuse or Neglect under *Johnson*," and that "an offender may commit the offense of Failing to Report Child Abuse or Neglect for a Functionally Impaired person but still make a phone call to report the neglect caused by another individual. Further, an offender may commit the offense of Failure to Report Child Abuse or Neglect without even having a duty to themselves provide care." The State asserted that both "the conduct and the animus are separate."

{¶ 11} The State distinguished the matter herein from *State v. Bridgeman*, 2d Dist. Champaign No. 2010 CA 16, 2011-Ohio-2680. Therein, Bridgeman was convicted of aggravated burglary, aggravated robbery, and grand theft as a result of a bank robbery. *Id*., ¶ 11. He was sentenced to a total of 13 years, namely 10 years for the burglary, robbery and theft charges to be served concurrently to each other and consecutively to a three-year firearm specification on the aggravated robbery. This Court applied *Johnson* and determined as follows:

> Under the facts of this case, it is apparent that the charges of aggravated robbery, aggravated burglary, and grand theft are allied offenses of similar import. The grand theft charge was based on the theft of $8,218; Bridgeman was not accused of stealing anything beyond the money from the bank. The aggravated robbery charge arose from Bridgeman's use of a deadly weapon in committing the grand theft. Bridgeman committed aggravated burglary by trespassing at the bank, by force and with a deadly weapon, while bank employees were present and with the purpose to commit grand theft and/or aggravated robbery. In short, all of the charges stem from Bridgeman's conduct of entering the bank to conduct a robbery, threatening the employees with a firearm, demanding money, and leaving the bank

with $8,218. Bridgeman committed multiple offenses through a single course of conduct and with a single state of mind. Therefore, the three counts should have been merged prior to sentencing. *Id*., ¶ 54.

**{¶ 12}** The State asserted that "the *Bridgeman* court has added language to the *Johnson* case that simply doesn't exist." The State asserted that "Kilby's crimes are not as intertwined as Bridgeman's," and that each of Kilby's "actions was based on a decision to achieve a different goal. None was necessary in order to complete the other crime. None are a predicate or lesser-included of the other." According to the State, to "change *Johnson* into now categorizing [Kilby's] behavior as a 'course of conduct' rather than the original language of 'conduct' would reward - if not encourage - criminals to push their illegal behavior to excess, making their conduct equal in the eyes of the law to those who commit just one crime," and demean the serious nature of the two crimes.

**{¶ 13}** The State directed the juvenile court's attention to *State v. Overton*, 10th Dist. Franklin No. 09AP-858, 2011-Ohio-4204, in which the Tenth District held that, while it is possible to commit felonious assault and child endangerment by the same conduct, Overton failed to establish that his offenses resulted from the same conduct, since "there were two separate incidents of abuse, the strike to the head and the blows to the chest," and the "incidents were separated in time." *Id*., ¶ 15. It was significant to the court that the State relied upon "the blows to the chest as the basis for the felonious assault conviction," while the "argument for child endangering, by contrast, was only based on the fact that appellant struck [the victim], without indicating whether this was the blow to the head * * * or the later blows to the chest." *Id.* According to the Tenth District, there "was sufficient evidence for the jury to conclude that

appellant committed child endangering through child abuse by striking [the victim] in the head * * * ," such that the offenses were not subject to merger. *Id.*, ¶ 16.

{¶ 14} The State asserted as follows:

Addressing *Johnson's* first question of whether it is possible to commit one offense *and* commit the other with the same conduct, the answer is no. Although each of the defendant's acts involved the same victim, each of the crimes was separate conduct and separate incidents of failure to act.

However, even if this Court should determine that the defendant's offenses can be committed by the same conduct, then the State asserts that when the Court addresses the separate question of whether or not the defendant's offenses were a single act, committed with a single state of mind, that the answer is no - the defendant's acts were *not* a single act, and they were *not* committed with a single state of mind. Because the facts of this specific case do not answer *Johnson's* two questions in the affirmative, then the offenses are *not* allied offenses of similar import and should not be merged.

{¶ 15} Regarding Kilby's reliance upon the Sentencing Memorandum submitted in the General Division, the State asserted that "the State's Memorandum did not address the charge before this juvenile court," and that its request that Kilby be required to lecture nurses "in no way addressed or conceded the issue of merger." The State asserted that Kilby's "arguments that the State's Memorandum weighs in favor of merger should be disregarded."

{¶ 16} The State asserted that the fact that the legislature granted exclusive jurisdiction to the juvenile court over the offense of failing to report child abuse or neglect "gives more

weight to the State's position that the crimes are not allied offenses."

{¶ 17} Finally, the State asserted that, even if the offenses are subject to merger, "the proper remedy would not be dismissal of the count. * * * The State should be allowed to pursue the defendant's accountability for this charge - through a plea or trial."

{¶ 18} In reply to the State's memorandum, Kilby asserted that the State "appears to argue that while the felony offense involved a year long failure by Mrs. Kilby to do <u>anything</u> about Makayla's condition, it did not include the alleged failure to report her condition on one specific date within that time period." Kilby asserted that the State's position ignores its "original theory of the felony case as set forth in the Bill of Particulars and Sentencing Memorandum attached to Mrs. Kilby's Motion to Dismiss." She asserted that a separate prosecution for failing to report child abuse or neglect violates the Double Jeopardy Clause, since "'where . . . a person has been . . . convicted for a crime which has various incidents included in it, he cannot be a second time tried for one of those incidents without being twice put in jeopardy for the same offense.'" (citation omitted). Finally, in response to the State's position that even if these offenses should merge, the Complaint should not be dismissed, Kilby asserted that "as a practical matter, a mere finding of guilt on the offense charged in this Complaint has serious ramifications in terms of civil liability as well," since R.C. 2151.421(M) provides that a violation of R.C. 2141.421(A) subjects the offender to compensatory and exemplary damages.

{¶ 19} In its Entry granting Kilby's motion to dismiss, the juvenile court determined that "the two charges of Failure to Provide for a Functionally Impaired Person and Failure to Report Abuse and Neglect are allied offenses of similar import pursuant to O.R.C. § 2941.25." The court found that "as the two offenses are allied offenses of similar import, the Defendant cannot

be convicted of both." The court then found as follows:

> * * * Pursuant to O.R.C. § 2941.25 and Ohio Supreme Court precedent, the Court finds that it is possible to commit the offenses of Failure to Provide for a Functionally Impaired Person and Failure to Report Child Abuse or Neglect with the same conduct. The Court finds the offenses were based on the following conduct: the Defendant, as a registered nurse, caretaker, and person acting in an official or professional capacity failed to provide care for Makayla Norman; the Defendant failed to identify and treat bedsores, an impacted rectum, lice, pneumonia, open wounds; and the Defendant failed to report the egregious neglect of Makayla Norman. This Court finds that the State has relied upon the same conduct of the Defendant to prove Failure to Provide for a Functionally Impaired Person and Failure to Report Child Abuse or Neglect. This Court further finds that while the State argues that these offenses are separate and occurred at two different instances, one from March 2010 to February 24, 2011, and the other specifically on February 24, 2011, the Court fails to recognize how the Defendant's conduct as it pertains to Failure to Report Child Abuse and Neglect can be confined to one specific date. The Court finds that in her capacity as a registered nurse and supervisor, the Defendant was to personally assess Makayla Norman every six (6) months, over the course of the entire indictment period. Furthermore, this Court finds that over the course of the indictment period, the same conduct resulted in the Defendant committing the offenses. Moreover, this Court finds the Defendant's Failure to Report Child Abuse and Neglect of

Makayla Norman resulted in and formed the predicate offense of Failure to Provide for a Functionally Impaired Person. The Court finds that the conduct that qualified as a Failure to Report Child Abuse and Neglect resulted in the Defendant's Failure to Provide Care for a Functionally Impaired Person. Therefore, the Court finds the offenses are allied offenses of similar import. The Court finds with the Defendant having been convicted of Failure to Provide for a Functionally Impaired Person, the charge before this Court must be and hereby is DISMISSED.

{¶ 20} The State asserts one assignment of error as follows:

THE JUVENILE COURT ERRED BY DISMISSING THE COMPLAINT CHARGING MARY KILBY WITH FAILURE TO REPORT CHILD ABUSE AND NEGLECT IN VIOLATION OF R.C. 2151.421(A)(1)(a) ON DOUBLE JEOPARDY GROUNDS WHERE PROSECUTION OF KILBY FOR THAT CRIME - SUBSEQUENT TO HER CONVICTIONS FOR FAILURE TO PROVIDE FOR A FUNCTIONALLY IMPAIRED PERSON IN VIOLATION OF R.C. 2903.16 - WOULD NOT SUBJECT HER TO MULTIPLE PUNISHMENTS, NOR SUCCESSIVE PROSECUTIONS, FOR A SINGLE OFFENSE.

{¶ 21} The State asserts that "the crimes at issue herein were not predicated upon the same conduct committed by Mary Kilby, but rather were the result of different conduct: her failure to provide proper medical and physical care to Makayla, as opposed to her failure to report the abuse or neglect of Makayla that was committed by others who were responsible for her

care."

{¶ 22}   Kilby again relies upon the references in the Bill of Particulars and Sentencing Memorandum regarding Kilby's failure to report, and she asserts that "such references can only mean that in connection with the felony prosecution for failure to provide care or services, the State's theory was that there was a continuing course of conduct (or inaction) that included both the failure to provide direct physical care for Makayla and the failure to report the living conditions and other signs of neglect to authorities."

{¶ 23}   In *State v. Yeldell*, 2d Dist. Montgomery Nos. 25198, 25209, 2013-Ohio-1918, ¶ 5, quoting *State v. Sturgell*, 2d Dist. Darke No. 1751, 2009-Ohio-5628, ¶ 10, this Court noted that "'The Double Jeopardy Clause protects against a second prosecution for the same offense, after acquittal or conviction, and against multiple punishments for the same offense.'"

{¶ 24}   R.C. 2941.25 provides as follows:

(A) Where the same conduct by defendant can be construed to constitute two or more allied offenses of similar import, the indictment or information may contain counts for all such offenses, but the defendant may be convicted of only one.

(B) Where the defendant's conduct constitutes two or more offenses of dissimilar import, or where his conduct results in two or more offenses of the same or similar kind committed separately or with a separate animus as to each, the indictment or information may contain counts for all such offenses, and the defendant may be convicted of all of them.

{¶ 25}   As this Court has previously noted:

"R.C. 2941.25 codifies the double jeopardy protections in the federal and Ohio Constitutions, which prohibit courts from imposing cumulative or multiple punishments for the same criminal conduct unless the legislature has expressed an intent to impose them.   R.C. 2941.25 expresses the legislature's intent to prohibit multiple convictions for offenses which are allied offenses of similar import per paragraph (A) of that section, unless the conditions of paragraph (B) are also satisfied."   *State v. Barker*, 183 Ohio App.3d 414, 2009-Ohio-3511, ¶ 22, citing *State v. Rance,* 85 Ohio St.3d 632, 1999-Ohio-291, overruled on other grounds by *State v. Johnson*, 128 Ohio St.3d 153, 2010-Ohio-6314.   *State v. Bridgeman*, 2d Dist. Champaign No. 2010 CA 16, 2011-Ohio-2680, ¶ 50.

**{¶ 26}**   As this Court further noted:

* * * The *Johnson* court overruled *Rance* "to the extent that it calls for a comparison of statutory elements solely in the abstract under R.C. 2941.25." *Johnson* at ¶ 44.   Now, "[w]hen determining whether two offenses are allied offenses of similar import subject to merger under R.C. 2941.25, the conduct of the accused must be considered."   *Id.*

*Johnson* states that "the intent of the General Assembly is controlling." *Id*. at 46.   "We determine the General Assembly's intent by applying R.C. 2941.25, which expressly instructs courts to consider the offenses at issue in light of the defendant's conduct."   *Id*.   The trial court must determine prior to sentencing whether the offenses were committed by the same conduct.   The court no longer must perform any hypothetical or abstract comparison of the offenses at

issue in order to conclude that the offenses are subject to merger. *Id*. at ¶ 47. "In determining whether offenses are allied offenses of similar import under R.C. 2941.25(A), the question is whether it is possible to commit one offense *and* commit the other with the same conduct, not whether it is possible to commit one *without* committing the other. If the offenses correspond to such a degree that the conduct of the defendant constituting commission of one offense constitutes commission of the other, then the offenses are of similar import." *Id*. at ¶ 48 (internal citation omitted).

"If the multiple offenses can be committed by the same conduct, then the court must determine whether the offenses were committed by the same conduct, i.e., a 'single act, committed with a single state of mind.'" *Id*. at ¶ 49 (citation omitted). "If the answer to both questions is yes, then the offenses are allied offenses of similar import and will be merged." *Id*. at ¶ 50. "Conversely, if the court determines that the commission of one offense will *never* result in the commission of the other, or if the offenses are committed separately, or if the defendant has separate animus for each offense, then, according to R.C. 2941.25(B), the offenses will not merge." *Id*. at ¶ 51.

*Bridgeman*, at ¶s 51-53.

{¶ 27} R.C. 2903.16(A) provides as follows: "No caretaker shall knowingly fail to provide a functionally impaired person under the caretaker's care with any treatment, care, goods, or service that is necessary to maintain the health or safety of the functionally impaired person when this failure results in physical harm or serious physical harm to the functionally impaired

person."

{¶ 28} R.C. 2151.421(A)(1)(a) provides as follows:

No person described in division (A)(1)(b) of this section who is acting in an official or professional capacity and knows, or has reasonable cause to suspect based on facts that would cause a reasonable person in a similar position to suspect, that a child under eighteen years of age or a mentally retarded, developmentally disabled, or physically impaired child under twenty-one years of age has suffered or faces a threat of suffering any physical or mental wound, injury, disability, or condition of a nature that reasonably indicates abuse or neglect of the child shall fail to immediately report that knowledge or reasonable cause to suspect to the entity or persons specified in this division.

R.C. 2151.421(A)(1)(b) provides that division (A)(1)(a) applies to a person who is a "registered nurse; * * *; visiting nurse; other health care professional * * *." R.C. 2151.421(A)(1)(a) provides that a person required to make a report "shall make it to the public children services agency or a municipal or county peace officer in the county in which the child resides or in which the abuse or neglect is occurring or has occurred." R.C. 2151.421(C) provides: "Any report made pursuant to division (A) * * * of this section shall be made forthwith either by telephone or in person and shall be followed by a written report, if requested." R.C. 2151.421(D)(1) requires a peace officer, upon receipt of report, to "refer the report to the appropriate children services agency." R.C. 2151.421(F)(1) provides that "the public children services agency shall investigate, within twenty-four hours, each report of child abuse or child neglect * * * to determine the circumstances surrounding the injuries, abuse, or neglect or the threat of injury,

abuse, or neglect, the cause of the injuries, abuse, neglect, or threat, and the person or persons responsible."

{¶ 29}  We initially note that the juvenile court misstated the dates in the indictments. The indictment period for the felony offense was "between the dates of March 17, 2010 through March 1, 2011," the date of Makayla's death, while the indictment period for the misdemeanor offense is "on or about the 24th day of February 2011."

{¶ 30}  Kilby  was convicted of failure to provide treatment, care, goods, or service for a functionally impaired person under her care that is necessary to maintain the health and safety of the functionally impaired person.  We initially note that the Bill of Particulars regarding that charge is focused upon Kilby's conduct in failing to "care for any of the numerous physical injuries and signs of neglect *to Makayla herself*," such that serious physical harm to Makayla resulted (emphasis added).  We cannot conclude, as Kilby asserts, that the parenthetical, merely incidental reference in the Bill of Particulars to Kilby's failure to report to authorities establishes that the misdemeanor offense is encompassed by the felony, such that double jeopardy attaches. We also note that R.C. 2903.16 does not identify a predicate offense, and we conclude that the trial court erred in determining that Kilby's failure to report child abuse and neglect "resulted in and formed the predicate offense," of her failure to provide for a functionally impaired person.

{¶ 31}  Further, we conclude that Kilby's reliance upon the Sentencing Memorandum is not persuasive; its purpose, unlike the Bill of Particulars, was not to provide Kilby with detail regarding the conduct constituting the felony offense in preparation for trial.  Rather, the purpose was to provide the court with all the details of Makayla's death.  In a sentencing memorandum advocating a particular sentence, the State may reference other criminal conduct allegedly

committed by the defendant which is pending in another court.

{¶ 32} Most importantly, we cannot conclude that the felony offense of which Kilby was convicted and the misdemeanor charge, pursuant to R.C. 2151.421, correspond to such a degree that Kilby's conduct in failing to personally minister care to Makayla by, for example, treating the obvious unbandaged wounds all over the child's body, constitutes a failure to make a statutorily mandated report, by telephone or in person, to a peace officer or children services, for purposes of initiating an investigation to determine the cause of and responsibility for Makayla's evident neglect. In other words, the offenses are not of similar import but rather were committed by distinct instances of failing to act, namely as Makayla's case manager of her personal caretakers, and separately as a statutorily mandated reporter. This conclusion is buttressed by the fact that R.C. 2903.16 did not require Kilby to make a report regarding Makayla's abuse or neglect, while R.C. 2151.421 mandated that she make such a report. One is an omission in rendering medical assistance, the other a crime of omission in not contacting the appropriate authorities.

{¶ 33} Finally, we note that subsequent to oral argument, the Ohio Supreme Court decided *State v. Washington*, Slip Opinion No. 2013-Ohio-4982, which addresses merger, however nothing in *Washington* changes our analysis.

{¶ 34} Having determined that Kilby's offenses were committed separately, such that her subsequent prosecution for failing to report child abuse or neglect is not barred by double jeopardy protections and not subject to merger, we hereby sustain the State's sole assignment of error. The judgment of the trial court is reversed and vacated, and the matter is remanded for proceedings consistent with this opinion.

. . . . . . . . . .

FAIN, P.J. and WELBAUM, J., concur.

Copies mailed to:

R. Lynn Nothstine
Richard Hempfling
Hon. Anthony Capizzi