[Cite as *State v. Conrad*, 2014-Ohio-1757.]

COURT OF APPEALS
FAIRFIELD COUNTY, OHIO
FIFTH APPELLATE DISTRICT


| | |
|---|---|
| STATE OF OHIO | JUDGES: |
| | Hon. W. Scott Gwin, P. J. |
| Plaintiff-Appellee | Hon. John W. Wise, J. |
| | Hon. Patricia A. Delaney, J. |
| -vs- | |
| | Case No. 13 CA 18 |
| GEORGE F. CONRAD | |
| | |
| Defendant-Appellant | O P I N I O N |


CHARACTER OF PROCEEDING:  Criminal Appeal from the Court of Common
Pleas, Case No.  12 CR 19


JUDGMENT:  Affirmed


DATE OF JUDGMENT ENTRY:  April 24, 2014


APPEARANCES:

For Plaintiff-Appellee    For Defendant-Appellant

GREGG MARX      JAMES L. DYE
PROSECUTING ATTORNEY   Post Office Box 161
DARCY T. COOK     Pickerington, Ohio  43147
ASSISTANT PROSECUTOR
239 West Main Street, Suite 101
Lancaster, Ohio  43130

*Wise, J.*

{¶1}    Appellant George F. Conrad appeals his sentence entered in the Fairfield County Court of Common Pleas following a guilty plea to two counts of Felonious Assault with two separate firearm specifications, one count of Improperly Discharging a Firearm into a Habitation, one count of Violation of a Protective Order, one count of Menacing by Stalking, and one count of Tampering with Evidence.

{¶2}    Appellee is the State of Ohio.

<u>STATEMENTS OF THE FACTS AND CASE</u>

{¶3}    The relevant facts as set forth in the Bill of Particulars, the State's Sentencing Memorandum and the statements made at the Sentencing Hearing are as follows:

{¶4}    Appellant George F. Conrad and Mindy M. Conrad were married with two daughters, but in the fall of 2011, they separated after being together for 18 years.

{¶5}    Appellant began sending Misty hundreds of text messages in August and September 2011, many of which caused her to fear for her safety.  Misty "lived in fear*** [and] had a constant feeling of the hair standing up on the back of [her] neck and the urge to look over [her] shoulder." (Sent. T. at 5). On one occasion, Appellant waited for her in his car after he elicited help from his sister to talk Misty into meeting her. On numerous occasions, Appellant stood along the road between Misty's home and work with a sign that said, "I love you."

{¶6}    Appellant told Misty, friends, and family that he would kill her if he ever saw her with another man. (Sent. T. at 34). Then as time went on, Appellant began telling people he was going to kill Misty and attempted to acquire a gun. (Sent. T. at 9,

34). As a result of this behavior, Appellant had charges in Pickaway County, Ohio and Fairfield County, Ohio and was on bond in both counties. (Sent. T. at 27, 32, 63). Misty had a civil protection order through Pickaway County, Ohio and an anti-stalking protection order through Fairfield County, Ohio. (Sent. T. at 5). As part of his bond, Appellant had a GPS monitor and SCRAM bracelet installed, along with a no-contact order with Misty. (Sent. T. at 6, 33, 63).

{¶7}    On October 1, 2011, Appellant was arrested for Menacing by Stalking and Telephone Harassment charges and was allowed one phone call. The arresting officer interrupted that phone call when he heard Appellant ask, "Why did you have me arrested?" Appellant told the officer that he would run his face across concrete, smash in his own face, and report that Misty did it to him.

{¶8}    During the evening of January 6, 2012, Appellant took his friend to 815 Schory Avenue, Lancaster, Fairfield County, Ohio, where he had followed his estranged wife and her friends. (Sent. T. at 34, 59). The friend talked Appellant out of harming Misty at that time, and his friend went home. (Sent. T. at 34). Appellant did not go home but instead, left the area, obtained a gun, and returned. (Sent. T. at 34, 36). Before returning to the house at 815 Schory Avenue, Appellant removed his GPS ankle monitor by breaking the cuff. The GPS ankle monitor registered the strap tamper at 3:44 a.m. on January 7, 2012 at 201-209 South Mount Pleasant Avenue; and shortly thereafter, it registered as stationary on South Maple Street. Law Enforcement later recovered the broken GPS device in the area of 758-770 South Maple Street, Lancaster, Fairfield County, Ohio.

{¶9} That night, Appellant was wearing all black clothing and a black hood. (Sent. T. at 34). Upon returning to 815 Schory Avenue, Appellant peeked into the windows of the house and decided that Misty was with another man. (Sent. T. at 36). At some point that night, Appellant entered Misty's vehicle, a Chrysler Pacifica, which was parked in the driveway at 815 Schory Avenue. (Sent. T. at 20, 34). Appellant had a loaded .32 caliber semiautomatic handgun, as he laid in wait in the backseat of her vehicle behind the driver's seat. (Sent. T. at 6, 34).

{¶10} When Misty entered her vehicle around 5:00 a.m. on January 7, 2012, Appellant attempted to shoot her but missed. (BOP at 1, 5, 6, 7; State's Sentencing at 6, Tr. 6). Misty ran away from the vehicle, and Appellant began to go after her while firing his gun at her.  (BOP at 1; State's Sentencing at 6). At least one of these shots went through the siding and lodged in the insulation of the house at 815 Schory Avenue, a single family dwelling, while the owner was inside the residence. (Sent. T. at 29, 68).

{¶11} Before chasing Misty down the street, Appellant shot at his third victim, Kevin Illes, and the bullet entered Kevin in the back and exited out the front of his stomach. (BOP at 3-4; State's Sentencing at 3-4). This took place in the driveway between 815 and 817 Schory Avenue, Lancaster, Fairfield County, Ohio. (BOP at 4). Kevin had emergency surgery to repair the damage caused by that bullet. (BOP at 4; Sent. T. at 23).

{¶12} While Kevin was lying on the ground on his stomach, Appellant stood over Kevin holding the handgun approximately one to two feet from Kevin's head and fired his gun again. (BOP at 2). This shot grazed Kevin's head and ear. (BOP at 2). This occurred in front of 815 Schory Avenue, Lancaster, Fairfield County, Ohio. *Id.*

{¶13} Kevin ran through the yards and was scaling a retaining wall between the backyard of 815 Schory Avenue and the yard at 641 Frederick Street, Lancaster, Ohio. (BOP at 4). Appellant fired again at Kevin, hitting him in the right thigh above his knee. *Id.* Kevin fell off the wall and landed on his face, causing bruising and cuts to his face. *Id.* The bullet was lodged in his leg and emergency surgery was required to remove the bullet. *Id.* Kevin continues to suffer from nerve damage in his left leg, which causes tingling in his lower leg, total numbness in his toes and foot, and he walks with a limp. (Sent. T. at 23). In all, Appellant shot Kevin three times. (Sent. T. at 23, 38).

{¶14} Appellant next chased Misty down the street, firing multiple times in her direction. (BOP at 1, 3, 7; State's Sentencing at 6). Appellant eventually caught up to Misty outside of 660 E. Fair Avenue, Lancaster, Fairfield County, Ohio. (BOP at 1, 3). Appellant grabbed Misty's arm, looked her in the eye and said, "You shouldn't have cheated on me, bitch." (BOP at 7; Sent. T. at 7). Misty begged for her life as Appellant put the gun to her face and pulled the trigger. (BOP at 1, 3, 7; State's Sentencing at 3; Sent. T. at 7, 9, 21, 38). This gunshot caused extensive injuries to Misty's face and jaw. (Sent. T. at 7-8, 12-13, 21). She lost 60 percent of her jaw. (Sent. T. at 7, 12). At the time of sentencing, on December 27, 2012, Misty had undergone 19 surgeries, one approximately every 18 days. (Sent. T. at 8, 13, 21). Doctors expect that she will require surgeries every five years for the rest of her life. (Sent. T. at 39).

{¶15} After leaving Misty to die at approximately 5:40 a.m., Appellant fled the scene. (BOP at 8; Sent. T. at 35). He was at large until being arrested in Pickaway County, Ohio at 7:05 p.m. on January 7, 2013. (BOP at 8; Sent. T. at 18). To date, Appellant's handgun has never been recovered. (BOP at 8; Sent. T. at 35).

{¶16} Once arrested, Appellant began writing letters to Misty and her family, as well as Kevin and his family. (Sent. T. at 15-16, 21, 24, 29-32, 37, 56). As Misty began divorce proceedings, Appellant began writing letters to the Domestic Relations Judge. (Sent. T. at 30-32). In all of these letters, Appellant included threats directed at the letters' recipients and at Misty. (Sent. T. at 29-32). In one letter, he threatened to turn Misty into the IRS for not paying taxes; and shortly thereafter, Misty received notice that the IRS was auditing her. (Sent. T. at 31). In one of his letters to the Domestic Relations Judge, Appellant stated, "It is women like Misty that cause Domestic Violence with their immoral behavior and lack of values." (Sent. T. at 32). These letters continued even after the court intervened and restricted Appellant's mail privileges. (Sent. T. at 29).

{¶17} On January 13, 2012, Appellant was indicted by the Fairfield County Grand Jury with two counts of attempted Murder, felonies of the first degree in violation of R.C. §2903.02; four counts of Felonious Assault, Felonies of the second degree in violation of R.C. §2903.11; One count each of Improperly Discharging a Firearm at or into a Habitation (R.C. § 2923.161, F 2); Violation of a Protection Order (R.C. 2919.27. F3); Menacing by Stalking, (R.C. 2903.211 F4); two Counts of Tampering with Evidence, Felonies of the third degree in violation of R.C. § 2921.12; and one count of Domestic Violence, a Misdemeanor of the first degree in violation of §2919.25. Each of the first counts contained a firearm specification pursuant to R. C. §2941.145.

{¶18} After a finding of competent to stand trial on December 27, 2012, Defendant withdrew his previously entered Not Guilty (and Not Guilty by Reason of Insanity) plea and pursuant to a negotiated Plea agreement entered guilty pleas to Count 3 (Felonious Assault) with the specification, Count 5 (Felonious Assault) with the

specification and counts 7 (Improper Discharge), 8 (Violation Protection Order), 9 (Menacing by Stalking), 10 and 11 (Tampering with Evidence). The court then scheduled Sentencing for a later date.

{¶19} On January 25, 2013, the Court held a sentencing hearing wherein the court heard Victim Impact statements, statements in mitigation and arguments from Counsel. After determining that none of the counts were allied offenses and therefore did not merge, the trial court sentenced Appellant to eight years in prison on Count Three; three years in prison on the firearm specification to Count Three; eight years in prison on Count Five; three years in prison on the firearm specification to Count Five; three years in prison on Count Seven; 36 months in prison on Count Eight; 12 months in prison on Count Nine; 24 months in prison on Count Ten; and 24 months in prison on Count Eleven. Judgment Entry of Sentence, Fairfield C.P. No. 2013-CR-19, January 28, 2013.

{¶20} The court ordered all sentences to be served consecutively to each other and any other sentences, for a total of 33 years in prison. *Id*

{¶21} Appellant now appeals, setting forth the following Assignment of Error:

## ASSIGNMENT OF ERROR

{¶22} "I. THE TRIAL COURT ERRED AND THEREBY DEPRIVED APPELLANT OF DUE PROCESS OF LAW IN NOT MERGING COUNT THREE WITH COUNTS SEVEN, EIGHT AND NINE AS THOSE OFFENSES ARE ALLIED OFFENSES AND OCCURRED AS ONE COURSE OF CONDUCT AND ACTION."

**I.**

**{¶23}** In his sole Assignment of Error, Appellant argues that the trial court erred in sentencing him consecutively on Counts 3, 7, 8 and 9. He also argues that the offenses were a part of one course of conduct and therefore are allied offenses of similar import.

**{¶24}** 2011 Am.Sub.H.B. No. 86, which became effective on September 30, 2011, revived the language provided in former R.C. 2929.14(E) and moved it to R.C. 2929.14(C)(4). The General Assembly has thus expressed its intent to revive the statutory fact-finding provisions pertaining to the imposition of consecutive sentences that were effective pre-*Foster. See State v. Wells,* Cuyahoga App.No. 98428, 2013–Ohio–1179, ¶ 11. These revisions to the felony sentencing statutes now require a trial court to make specific findings when imposing consecutive sentences. Nonetheless, "[a]lthough H.B. 86 requires the trial court to make findings before imposing a consecutive sentence, it does not require the trial court to give its reasons for imposing the sentence." *State v. Bentley,* Marion App.No. 9–12–31, 2013–Ohio–852, ¶ 12, citing *State v. Frasca,* Trumbull App.No. 2011–T–0108, 2012–Ohio–3746, ¶ 57. Likewise, "under H.B. 86, a trial court is not required to articulate and justify its findings at the sentencing hearing when it imposes consecutive sentences as it had to do under S.B. 2." *State v. Redd,* Cuyahoga App.No. 98064, 2012–Ohio–5417, ¶ 12. But the record must clearly demonstrate that consecutive sentences are not only appropriate, but are clearly supported by the record. *See State v. Bonnell,* Delaware App.No. 12CAA3022, 2012–Ohio–5150.

**{¶25}** Revised Code §2929.14(C)(4) provides, in relevant part:

**{¶26}** "(4) If multiple prison terms are imposed on an offender for convictions of multiple offenses, the court may require the offender to serve the prison terms consecutively if the court finds that the consecutive service is necessary to protect the public from future crime or to punish the offender and that consecutive sentences are not disproportionate to the seriousness of the offender's conduct and to the danger the offender poses to the public, and if the court also finds any of the following:

**{¶27}** "(a) The offender committed one or more of the multiple offenses while the offender was awaiting trial or sentencing, was under a sanction imposed pursuant to section 2929.16, 2929.17, or 2929.18 of the Revised Code, or was under post-release control for a prior offense.

**{¶28}** "(b) At least two of the multiple offenses were committed as part of one or more courses of conduct, and the harm caused by two or more of the multiple offenses so committed was so great or unusual that no single prison term for any of the offenses committed as part of any of the courses of conduct adequately reflects the seriousness of the offender's conduct.

**{¶29}** "(c) The offender's history of criminal conduct demonstrates that consecutive sentences are necessary to protect the public from future crime by the offender."

**{¶30}** In its sentencing entry, the court found that consecutive sentencing is necessary to punish Appellant and protect the public, consecutive sentencing is not disproportionate to the purposes and principles of felony sentencing, and that the harm caused was so great or unusual that no single prison term adequately reflects the seriousness of Appellant's conduct. (Judgment Entry of Sentence, January 28, 2013, at

8). The trial court found that "the crimes were planned, premeditated, and deliberate." The court further found the crimes "were very serious and caused serious physical pain and suffering, and psychological harm, initially, months after, now and in the future." Id. at 6. The court also found Appellant's actions were "motivated out of rage, anger and jealousy and were unprovoked."

{¶31} While Appellant claims the crimes charged in Counts 3, 7, 8 and 9 were a part of the same course of conduct, the offenses are not allied offenses of similar import.

{¶32} R.C. 2941.25 reads as follows:

{¶33} "(A) Where the same conduct by defendant can be construed to constitute two or more allied offenses of similar import, the indictment or information may contain counts for all such offenses, but the defendant may be convicted of only one.

{¶34} "(B) Where the defendant's conduct constitutes two or more offenses of dissimilar import, or where his conduct results in two or more offenses of the same or similar kind committed separately or with a separate animus as to each, the indictment or information may contain counts for all such offenses, and the defendant may be convicted of all of them."

{¶35} In *State v. Johnson,* 128 Ohio St.3d 153, 2010–Ohio–6314, 942 N.E.2d 1061, the Ohio Supreme Court held: "When determining whether two offenses are allied offenses of similar import subject to merger under R.C. 2941.25, the conduct of the accused must be considered." *Id.,* at the syllabus.

**{¶36}** Appellant's reliance on *Johnson* is misplaced. While each of the crimes were committed close in time to one another, each offense committed by Appellant was a separate act.

**{¶37}** Count 7 – Improperly Discharging Firearm into Habitation

**{¶38}** This offense was committed when Appellant fired his gun and shot a bullet into the residence at 815 Schory Avenue while someone was in the home. (T. at 68). The victim named in this count is the homeowner, S.D. This act was separate and distinct from the other charges.

**{¶39}** Count 8 – Violation of Protective Order

**{¶40}** This Count stemmed from the protection orders which prohibited Appellant from having any contact with Misty or from coming within 1,000 feet of her. Appellant violated these orders when he began following her on the evening of January 6, 2012. He peeked in the windows of the home at 815 Schory Avenue. He concealed himself in the backseat of her vehicle and ambushed her when she opened the door to her vehicle on the morning of January 7, 2012. This act was completed before any shots were fired. Appellant's actions support a separate act and animus for this count.

**{¶41}** Count 9 – Menacing by Stalking

**{¶42}** This Count requires a "pattern of conduct". Such conduct began in August, 2011, starting with hundreds of texts messages, continued with many other acts which included standing on the roadside with an "I Love You" sign, and also included statements made by Appellant to a number of people that he would kill Misty. These acts began before the events which transpired on January 7, 2012. Appellant's actions support a separate act and animus for this count.

**{¶43}** Count 3 – Felonious Assault

**{¶44}** Appellant's actions in committing this crime were done with a separate animus than the above listed counts. Appellant caused serious physical harm to Misty when he pressed the gun against her face and pulled the trigger. This occurred after Appellant committed the acts contained in Counts 7, 8 and 9. This act took place after Appellant shot Kevin Illes 3 times. Appellant's actions support a separate act and animus for this count.

**{¶45}** The fact that the above acts were committed close in time and space does not require merger of the charges.

**{¶46}** Appellant's sole Assignment of Error is overruled.

**{¶47}** For the foregoing reasons, the judgment of the Court of Common Pleas of Fairfield County, Ohio, is affirmed.

By: Wise, J.

Gwin, P. J., and

Delaney, J., concur.

JWW/d 0409