[Cite as *State v. Cannada*, 2025-Ohio-1227.]

COURT OF APPEALS
MUSKINGUM COUNTY, OHIO
FIFTH APPELLATE DISTRICT

| | | |
|---|---|---|
| STATE OF OHIO, | : | JUDGES: |
| | : | Hon. Craig R. Baldwin, P.J. |
| Plaintiff - Appellee | : | Hon. William B. Hoffman, J. |
| | : | Hon. Andrew J. King, J. |
| -vs- | : | |
| | : | |
| ANTONIO CANNADA, Sr., | : | Case No. CT2024-0097 |
| | : | |
| Defendant - Appellant | : | O P I N I O N |


CHARACTER OF PROCEEDING:          Appeal from the Muskingum County
                                  Court of Common Pleas, Case No.
                                  CR2024-0287


JUDGMENT:                         Affirmed


DATE OF JUDGMENT:                 April 4, 2025


APPEARANCES:

For Plaintiff-Appellee            For Defendant-Appellant

NO APPEARANCE                     APRIL CAMPBELL
                                  Campbell Law, LLC
                                  545 Metro Place South, Suite 100
                                  Dublin, Ohio 43017

*Baldwin, P.J.*

{¶1} The appellant appeals the trial court's acceptance of his guilty plea to one count of violating a protection order and one count of having weapons while under disability, and the sentence imposed by the trial court. Appellee is the State of Ohio.

**STATEMENT OF THE FACTS AND THE CASE**

{¶2} On or about May 2, 2024, the appellant was driving a motor vehicle north on State Route 60 when he was observed by a deputy sheriff crossing over the fog line twice. The deputy pulled the vehicle over, approached, and found the appellant, a known felon with a lengthy criminal history, in the driver's seat. The appellant told the deputy that he did not have a driver's license or insurance. In addition, the appellant was acting nervous, shaking, and not making eye contact with the deputy. The deputy was advised by dispatch that the Zanesville Municipal Court had an active warrant out for the appellant's arrest, and asked the appellant to exit the vehicle. The deputy observed the appellant fumble around his right hip area, took a defensive stance, and ordered the appellant to show his hands. The appellant then admitted that he had a handgun on his right hip. The deputy removed the firearm, which was loaded with four rounds, from the appellant's person. In addition, the deputy discovered a meth bubble with burn marks in one of the appellant's pockets. Further, a backpack containing several pieces of crumpled foil, one with a small amount of white powder, was found in the backseat of the vehicle. Finally, the appellant was under a Domestic Relations Court Protection Order at the time which prohibited him from owning or possessing a deadly weapon.

{¶3} On May 9, 2024, the appellant was indicted on the following charges:

- Count 1 - Having Weapons While Under Disability in violation of R.C. 2923.13(A)(1) and (B), a felony of the third degree;

- Count 2 - Having Weapons While Under Disability in violation of R.C. 2923.13(A)(4) and (B), a felony of the third degree;

- Count 3 - Possession of a Fentanyl-Related Compound in violation of R.C. 2925.11(A) and (C)(11)(a), a felony of the fifth degree;

- Count 4 - Violating a Protection Order in violation of R.C. 2919.27(A)(1) and (B)(4), a felony of the third degree, with a firearm specification - 1 year - in violation of R.C. 2941.141(A);

- Count 5 - Having Weapons While Under Disability in violation of R.C. 2923.13(A)(2) and (B), a felony of the third degree;

- Count 6 - Having Weapons While Under Disability in violation of R.C. 2923.13(A)(3) and (B), a felony of the third degree;

- Count 7 - Illegal Assembly or Possession of Chemicals for the Manufacture of Drugs in violation of R.C. 2925.041(A) and (C), a felony of the third degree; and,

- Count 8 - Illegal Use or Possession of Drug Paraphernalia in violation of R.C. 2925.14(C)(1) and (F)(1), a misdemeanor of the fourth degree.

The appellant was arraigned on May 15, 2024, at which time he pleaded not guilty. He was appointed counsel on May 17, 2024.

{¶4} The parties engaged in plea negotiations, and on July 3, 2024, a Plea of Guilty form signed by the appellant and his trial counsel, as well as the appellee, was filed

with trial court. The Plea of Guilty form provided that the appellant agreed to plead guilty to Count 4, Violating a Protection Order in violation of R.C. 2919.27(A)(1) as amended; and, Count 6, Having Weapons While Under Disability in violation of R.C. 2923.13(A)(3). The Plea of Guilty form also set forth the nine-month minimum and thirty-six month maximum prison terms for each of the two offenses. In exchange for the appellant's plea of guilty to Counts 4 and 6 the appellee agreed to amend Count 4 to remove the firearm specification, and agreed to move for dismissal of Counts 1, 2, 3, 5, 7, and 8. The parties further agreed that the counts did not merge, that each would argue for the sentence they believed appropriate, and that sentencing recommendations did not have to be followed by the trial court. A change of plea hearing proceeded on July 3, 2024, at which time the trial court engaged in the requisite Crim.R. 11 colloquy. The appellant attempted to waive a presentence investigation (PSI), but the trial court nevertheless ordered the PSI.

{¶5} The sentencing hearing proceeded on August 21, 2024. The appellee summarized the appellant's offenses, as well as his criminal history, and urged the trial court to impose an aggregate sentence of at least four years. The appellant's counsel argued that the appellant needed drug treatment, and urged the trial court to impose an aggregate sentence of eighteen months. The trial court stated the following:

> THE COURT: I'll note we are here on two separate counts. Count 4 is, as amended, a violation of a protection order, felony of the third degree; Count 6, having a weapon under disability, also a felony of the third degree.
>
> The State is arguing for at least 4 years in prison. Your attorney on your behalf is arguing for 18 months.

I will also note for the record I've received the presentence investigation. I have reviewed it thoroughly.

It looks like you've been using illegal drugs - - it looks like for about 32 years?

THE DEFENDANT: Yes.

THE COURT:     You started when you were 12?

THE DEFENDANT: Yes, sir.

THE COURT:     So you've always been a drug addict, haven't you?

THE DEFENDANT: Yes, sir.

THE COURT:     Reviewing your criminal history, it's really bad. You would agree?

THE DEFENDANT: Yes.

THE COURT:     September of 2021, possession of meth, possession of drug paraphernalia. A prison sentence.

July 2015, Guernsey County, possession of heroin. Trafficking - - trafficking in heroin was dismissed. You went to prison for 4 years on that.

February of 2015, trafficking in heroin. 18 months in prison.

February 2013, having a weapon while under disability. 9 months in prison plus 3 months PRC revocation time.

Cuyahoga County, November of 2011, two counts of possession of drugs.

September of 2010, having a weapon while under disability, two counts, and possession of drugs.

August of 2010, having a weapon while under disability, possession of drugs.

June of 2006, trafficking in drugs, possession of drugs, possession of criminal tools.

September 2005, possession of drugs, F-4.

January of 2003, having a weapon while under disability.

October of 2000, trafficking in a counterfeit controlled substance.

September of 1999, receiving stolen property, which was a motor vehicle.

March of 1999, assault of a peace officer.

March of 1999, two counts of trafficking in drugs with a school specification, in addition to drugs.

July of 1999, two counts of possession of drugs, juvenile, as a felony.

1998, two counts of receiving stolen property.

December 1996, receiving stolen property.

October of 1995, a burglary.

Also, an adult misdemeanor record. Your extensive misdemeanor record includes convictions for aggravated menacing, possession of drug paraphernalia, possession of marijuana, neglect/cruelty of animals, obstructing, domestic violence, drug abuse, theft, DUI, falsification, disorderly conduct, public intoxication, several driving under suspension.

Does all that sound about right?

THE DEFENDANT: Yes, sir.

THE COURT: It sounds pretty bad when you hear it all, doesn't it?

THE DEFENDANT: Yes, it is.

\* \* \*

THE COURT: . . . Based upon the facts and circumstances of this case, on Count 4 you will be sentenced to 36 months in prison. On Count 6 you'll be sentenced to 36 months in prison. Those two terms to run consecutively for an aggregate prison sentence of 72 months.

\* \* \*

The Court finds that consecutive sentences are necessary to protect the public and punish this offender. Consecutive sentences are not disproportionate to the seriousness of the conduct and the danger posed to the public.

Additionally, your history of criminal conduct demonstrates that consecutive sentences are necessary to protect the public from future crimes.

With this criminal history, you are the exact type of person that gets maximum consecutive sentences, and you understand that, I'm sure.

The trial court issued an Entry on August 26, 2024, documenting the above sentence, including the reasoning set forth in R.C. 2929.14(C)(4) regarding the imposition of consecutive sentences.

**{¶6}** The appellant filed a timely appeal, and his counsel filed a brief pursuant to *Anders v. California,* 386 U.S. 738 (1967), in which she sets forth the following potential assignment of error:

**{¶7}** "I. THE TRIAL COURT ERRED IN ACCEPTING CANNADA'S GUILTY PLEAS UNDER CRIM.R. 11 AND ERRED IN SENTENCING HIM."

## STANDARD OF REVIEW

**{¶8}** The United States Supreme Court held in *Anders* that if, after conscientious examination of the record, an appellant's counsel concludes the case is wholly frivolous, then he or she should so advise the court and request permission to withdraw. *Id.* at 744. Counsel must accompany the request with a brief identifying anything in the record that could arguably support the appeal. *Id.* Counsel also must: (1) furnish his client with a copy of the brief and request to withdraw; and (2) allow his client sufficient time to raise any matters that the client chooses. *Id.* Once the appellant's counsel has satisfied these requirements, the appellate court must fully examine the proceedings below to determine if any arguably meritorious issues exist. If the appellate court also determines that the appeal is wholly frivolous, it may grant counsel's request to withdraw and dismiss the appeal without violating constitutional requirements or may proceed to a decision on the merits if state law so requires. *Id.*

**{¶9}** Attorney April F. Campbell, the appellant's appellate counsel, filed an *Anders* brief and moved to withdraw on October 31, 2024, informing this Court that she had conscientiously examined the case, reviewed the entire record, researched all potential issues, and determined that there were no meritorious issues for review which would support an appeal. Attorney Campbell requested that this Court make an

independent review of the record to determine whether there are any additional issues that would support an appeal. Further, she avowed in the Certificate of Service that she served upon the appellant a copy of the Appellant's *Anders* Brief, as well as copies of the transcripts.

{¶10} This Court informed the appellant in a November 12, 2024, Judgment Entry that the Court received notice he had been informed by his attorney that an *Anders* brief had been filed on his behalf and provided notice that supplied the appellant with a copy. In addition, the appellant was granted sixty days from the date of the entry to file a pro se brief in support of his appeal.

{¶11} The appellant filed a document entitled "Pro Se Brief" on January 14, 2025, in which he sets forth his arguments as to why the sentence imposed by the trial court is in error. First, he argues that his appellate counsel did not contact or communicate with him, and that he did not receive the *Anders* Brief.  Next, he argues that the trial court "breached the plea recommendations" when it sentenced him to two consecutive three year terms, and that the trial court "over sentenced" him and abused its judicial authority. He further argues that the violation of a protection order and weapons under disability charges are allied offenses for which his sentences should be imposed concurrently, and that the trial court's failure to do so is plain error.  In addition, he argues that the trial court had a vendetta against him, evidenced when it stated at the sentencing hearing that the appellant "was the type of criminal that deserves max & consecutive sentence [sic]". The appellant submits that this Court should remand the matter for resentencing or vacate his sentence. Finally, the appellant requested that he be provided with a copy of the *Anders* Brief and all paperwork filed concerning this appeal, and requested that this Court appoint

him new appellate counsel. We note that the appellant's citation to specific language contained in the sentencing hearing transcript indicates that he did, in fact, receive copies of the transcripts as set forth in appellate counsel's Certificate of Service; it stands to reason, therefore, that he also received the service copy of the *Anders* Brief, as all were served simultaneously.

{¶12} The record establishes that the appellant's counsel has satisfied the requirements set forth in *Anders.* Accordingly, we review the record in this case and determine whether any arguably meritorious issues exist, "… keeping in mind that, '*Anders* equates a frivolous appeal with one that presents issues lacking in arguable merit. An issue does not lack arguable merit merely because the prosecution can be expected to present a strong argument in reply or because it is uncertain whether a defendant will prevail on the issue on appeal. 'An issue lacks arguable merit if, on the facts and law involved, no responsible contention can be made that it offers a basis for reversal.' *State v. Pullen,* 2002-Ohio-6788, ¶ 4 (2nd Dist.); *State v. Marbury,* 2003-Ohio-3242, ¶ 7-8 (2nd Dist.); *State v. Chessman,* 2005-Ohio-2511, ¶ 16-17 (2nd Dist.)." *State v. Moore*, 2009-Ohio-1416, ¶4 (2nd Dist.).'" *State v. Reynolds*, 2024-Ohio-1956, ¶ 10 (5th Dist.).

## ANALYSIS

{¶13} Appellate counsel submits as a potential assignment of error that the trial court erred in accepting the appellant's guilty pleas under Crim.R. 11 and in sentencing him. We disagree.

{¶14} Our review of the record establishes that the trial court complied with Crim.R. 11. The trial court engaged in a thorough colloquy with the appellant, advising

him of the constitutional rights he was giving up; informed him regarding maximum potential penalties, including the fact that by pleading guilty he was subject to a mandatory prison sentence; and, made sure that he understood the potential sentence and that he may be subject to the imposition of post release control.

{¶15} The trial court also questioned the appellant to determine whether he was able to understand his plea, and whether his plea was validly entered, finding in the affirmative on both counts. Accordingly, the appellant's guilty plea was knowingly, voluntarily, and intelligently given, and there was no error in the trial court's acceptance of the appellant's plea of guilty to one count of violating a protection order and one count of having weapons while under disability.

{¶16} Nor did the trial court err in the sentence imposed upon the appellant. Felony sentences are reviewed under R.C. 2953.08(G)(2). *State v. Goings*, 2014-Ohio-2322, ¶ 20 (6th Dist.). An appellate court may increase, modify, or vacate and remand a judgment only if it clearly and convincingly finds either "(a) the record does not support the sentencing court's findings under division (B) or (D) of section 2929.13, division (B)(2)(e) or (C)(4) of section 2929.14, or division (I) of section 2929.20 of the Revised Code, whichever, if any, is relevant" or "(b) the sentence is otherwise contrary to law." *Id.* See, also, *State v. Yeager*, 2016-Ohio-4759, ¶ 7 (6th Dist.). In the case sub judice, the sentence imposed by the trial court was within the statutory parameters. Accordingly, the trial court did not err with regard to the sentence imposed upon the appellant.

{¶17} Furthermore, the trial court did not, as submitted by the appellant in his Pro Se brief, "breach" a plea agreement or otherwise abuse its judicial authority when sentencing the appellant. The plea agreement provided that the parties would argue for

the sentence each believed to be appropriate. This is precisely what occurred at the sentencing hearing; the appellant's trial counsel argued that the appellant should be sentenced to 18 months, and the appellee argued that the appellant should be sentenced to "at least" four years. The applicable statute provides that the potential sentence for each count was up to 36 months. The trial court sentenced the appellant to 36 months on each count, which was within the statutory range. Furthermore, the trial court made the findings required by R.C. 2929.14(C)(4) before it imposed consecutive sentences. The trial court specifically found that consecutive sentences were necessary to protect the public and punish the appellant, and were not disproportionate to the seriousness of the appellant's conduct and the danger he posed to the public. The trial court also considered the appellant's extensive history of criminal conduct, finding that consecutive sentences were necessary to protect the public from future crime, that consecutive sentences were necessary to punish this offender, and that consecutive sentences were not disproportionate to the seriousness of the appellant's conduct and danger posed to the public.

{¶18} In addition, the offenses to which the appellant pleaded guilty are not, as argued in his Pro Se Brief, allied offenses subject to one sentence. R.C. 2941.25 addresses multiple counts, and  protects a criminal defendant's rights under the Double Jeopardy Clauses of the United States and Ohio Constitutions by prohibiting convictions of allied offenses of similar import:

(A)    Where the same conduct by defendant can be construed to constitute two or more allied offenses of similar import, the indictment or

information may contain counts for all such offenses, but the defendant may be convicted of only one.

(B)     Where the defendant's conduct constitutes two or more offenses of dissimilar import, or where his conduct results in two or more offenses of the same or similar kind committed separately or with a separate animus as to each, the indictment or information may contain counts for all such offenses, and the defendant may be convicted of all of them.

The application of R.C. 2941.25 requires a review of the subjective facts of the case in addition to the elements of the offenses charged. *State v. Hughes*, 2016-Ohio-880, ¶ 22 (5th Dist.).

**{¶19}** In a plurality opinion, the Ohio Supreme Court modified the test for determining whether offenses are allied offenses of similar import. *State v. Johnson*, 2010-Ohio-6314. The Court directed lower courts to look at the elements of the offenses in question and determine "whether it is possible to commit one offense and the other with the same conduct." *Id.* at ¶ 48. If the answer is in the affirmative, the court must then determine whether or not the offenses were committed by the same conduct. *Id.* at ¶ 49. If the answer to the above two questions is yes, then the offenses are allied offenses of similar import and will be merged. *Id.* at ¶ 50. If, however, the court determines that commission of one offense will never result in the commission of the other, or if there is a separate animus for each offense, then the offenses will not merge. *Id.* at ¶ 51.

**{¶20}** *Johnson's* rationale has been described by the Ohio Supreme Court as "incomplete." *State v. Earley*, 2015-Ohio-4615, ¶ 11. The Court has further instructed courts to ask three questions when considering whether a defendant's conduct supports

multiple offenses: "(1) Were the offenses dissimilar in import or significance? (2) Were they committed separately? and (3) Were they committed with separate animus or motivation? An affirmative answer to any of the above will permit separate convictions. The conduct, the animus, and the import must all be considered." *Id.* at ¶12, citing *State v. Ruff*, 2015-Ohio-995, ¶31.

{¶21} In this case, the appellant pleaded guilty to Having Weapons While Under Disability in violation of R.C. 2923.13(A)(3), and Violating a Protection Order in violation of R.C. 2919.27(A)(1). R.C. 2919.27 provides for violating a protection order, consent agreement, or anti-stalking protection order; protection order issued by court of another state, and states in pertinent part:

(A) No person shall recklessly violate the terms of any of the following:

(1) A protection order issued or consent agreement approved pursuant to

section 2919.26 or 3113.31 of the Revised Code;

The firearm specification connected to the Violating a Protection Order charge in Count 4 was dismissed, and as such could not have been the basis of the Having Weapons While Under Disability count to which the appellant pleaded guilty.

{¶22} R.C. 2923.13 provides for having weapons while under disability, and states in pertinent part:

(A) Unless relieved from disability under operation of law or legal process,

no person shall knowingly acquire, have, carry, or use any firearm or

dangerous ordnance, if any of the following apply:

\* \* \*

(3) The person is under indictment for or has been convicted of any felony offense involving the illegal possession, use, sale, administration, distribution, or trafficking in any drug of abuse or has been adjudicated a delinquent child for the commission of an offense that, if committed by an adult, would have been a felony offense involving the illegal possession, use, sale, administration, distribution, or trafficking in any drug of abuse.

The appellant had been previously convicted of numerous felony offenses, including drug offenses, one result of which was that he was prohibited from possessing firearms. The appellant's Having Weapons While Under Disability charge was therefore separate and distinct from his Violating a Protection Order charge. The offenses were committed separately, with separate animus, and as such are not allied offenses.

**{¶23}** Finally, the appellant's request for the appointment of new appellate counsel is also without merit. As set forth by our brethren at the Eighth District Court of Appeals:

In general, Ohio appellate courts faced with a motion to withdraw as appellate counsel on grounds that an appeal is frivolous must "fully examine the proceedings in the trial court, the brief of appointed counsel, the arguments pro se of the indigent, and then determine whether or not the appeal is wholly frivolous." *State v. Toney*, 23 Ohio App.2d 203, 208, 262 N.E.2d 419 (7th Dist.1970).

Exactly how the appellate court should determine whether an appeal is "wholly frivolous" has never been clearly stated. On one extreme, an appellate court could take the motion to withdraw at face value, but that process would violate the express terms of Anders that require the appellate

court to determine whether any of the potential assignments of error are "arguable on their merits." *Anders*, 386 U.S. at 744, 87 S.Ct. 1396, 18 L.Ed. 2d 493.

The other extreme is for the appellate court to undertake a completely independent examination of the record to determine whether there might be colorable issues on appeal. This approach has been criticized as "overkill" that makes the appellate court de facto appellate counsel for the defendant. As one court has stated:

> The opposite extreme would be for us to comb the record even where the *Anders* brief appeared to be perfectly adequate, searching for possible nonfrivolous issues that both the lawyer and his client may have overlooked and, if we find them, appointing a new lawyer and flagging the issues we've found for him. We have done this on occasion but have now concluded that it is not a sound practice. It makes this court the defendant's lawyer to identify the issues that he should be appealing on and to hire another member of the bar to argue the issues that we have identified. The defendant ends up in effect with not one appellate counsel but (if he is lucky) six—his original lawyer, who filed the Anders brief; our law clerk or staff attorney who scours the record for issues that the lawyer may have overlooked; a panel of this court that on the advice of the law clerk or staff attorney denies the Anders motion and appoints another lawyer for the appellant; the new lawyer. This is overkill, this six-lawyer representation of criminal defendants

that we have described and today renounce; it gives the indigent defendant more than he could expect had counsel (whether retained or appointed) decided to press the appeal, since counsel's decision on which issues to raise on appeal would normally be conclusive.

(Citations omitted.) *United States v. Wagner*, 103 F.3d 551, 552 (7th Cir.1996).

*State v. Taylor*, 2015-Ohio-420, ¶¶ 14-16 (8th Dist.).

**{¶24}** The appellant was appointed appellate counsel, who undertook a review of the court record, including transcripts of the change of plea hearing and the sentencing hearing. Having determined that no non-frivolous arguments for reversal existed, she filed an *Anders* brief and certified that she mailed a copy of the brief and copies of the transcripts to the appellant. The appellant argues that he did not receive the *Anders* brief, but his reference to the transcript of the sentencing hearing belies this assertion. An independent review of the matter was then conducted by this Court's judicial staff attorney, who also found no non-frivolous claims that could be argued herein. Finally, the three-member panel of this Court has also reviewed the matter. The appellant has thus had five legal minds review his case, and all are in agreement that no non-frivolous claims exist herein. He is not entitled to have yet another attorney review this case. As such, his request for the appointment of a new appellate attorney is without merit.

## CONCLUSION

**{¶25}** Based upon the foregoing, and after independently reviewing the record, we agree with appellate counsel's conclusion that no non-frivolous claims exist that would justify remand or review of the appellant's conviction or sentence. Furthermore, the

arguments set forth by the appellant in his Pro Se Brief are without merit; as set forth in the Plea of Guilty form, the appellant agreed that the counts did not merge, that each party would argue for the sentence they believed appropriate, and that sentencing recommendations did not have to be followed by the trial court. We find the appeal to be wholly frivolous under *Anders.* Attorney Campbell's motion to withdraw as counsel for the appellant is hereby granted, and the judgment of the Muskingum County Court of Common Pleas is hereby affirmed.

By: Baldwin, P.J.

Hoffman, J. and

King, J. concur.